**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION**

**CASE NO.: 15-cv-10060-JEM**

BLUEWATER KEY RV OWNERSHIP PARK
PROPERTY OWNERS ASSOCIATION, INC.,
a Florida Corporation,

                      Plaintiff,

v.

RITA CLARK, an individual, d/b/a
BLUEWATER RENTALS,

                      Defendant.

_____/

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT
TO RULES 12(B)(6) & 12(B)(1) WITH INCORPORATED MEMORANDUM OF LAW**

Defendant, RITA CLARK, (hereinafter "CLARK") by and through her undersigned

counsel, hereby files this Motion to Dismiss Plaintiff's Complaint for the failure to state a claim

pursuant to Rule 12(b)(6) and for lack of standing pursuant to Rule 12(b)(1) along with an

incorporated Memorandum of Law and in support thereof states the following:

**I.    INTRODUCTION**

Plaintiff BLUEWATER KEY RV OWNERSHIP PARK PROPERTY OWNERS

ASSOCIATION, INC., (hereinafter the "ASSOCIATION") has filed a sprawling shotgun

Complaint[1] against Defendant CLARK alleging five progressively incorporated counts of state

---

[1] The docket in this matter makes reference to Plaintiff's Complaint (DE#1) as well as an Amended Complaint (DE #6). Defendant was served with the Complaint (DE#1) and the undersigned counsel obtained a copy of the Amended Complaint (DE#6) from the Pacer system and could not see any difference. The page title on (DE#6) is still called Complaint. The undersigned counsel requested clarification from Plaintiff's counsel and did not receive any response. This motion is based on the Complaint (DE#1) as served on the Defendant but with a good-faith belief that there is no substantive difference between the two Complaints at (DE#1) and (DE#6).

and federal trademark infringement and unfair competition violations pertaining to 13 service marks, of which one is registered federally while the other is registered in Florida.

Count I of the Complaint is titled *Federal Trademark Infringement under the Lanham Act (15 U.S.C. § 1114)*. Count II is titled *Trademark Infringement, False Designation of Origin, False Advertising, and Unfair Competition under the Lanham Act (15 U.S.C. § 1125(a)-(b))*.[2] Count III of the ASSOCIATION's Complaint is titled *Trademark Infringement under Florida Common Law*. Plaintiff's Count IV is titled *Registration and Protection of Trademarks Act (F.S.A. § 495)* while Count V is titled *Florida Deceptive and Unfair Trade Practices Act (F.S.A. § 501)*. The ASSOCIATION's five count Complaint is 204 sprawling paragraphs with the allegations of each successive count re-incorporated into the next. Additionally, Plaintiff's Complaint has 203 repetitive and often immaterial exhibits and sub-exhibits attached.

The ASSOCIATION's Complaint should be dismissed as the Complaint is an impermissible shotgun pleading. Second, the Complaint should be dismissed as the ASSOCIATION has failed to plead sufficient standing to bring this action and as such the Court does not have subject matter jurisdiction pursuant to Rule 12(b)(1). Further, each of the five counts should be dismissed as each fails to state of claim as the ASSOCIATION has failed to plead facts to plausibly establish that each of the 13 alleged service marks, which are geographically descriptive had achieved a protectable level of distinctiveness through acquired secondary meaning as of the date of Defendant's alleged infringement. Lastly, Count V of the ASSOCIATION's Complaint should be dismissed as the allegations on the face of the Complaint conclusively establish that the FDUTPA claim is barred by Florida's Statute of Limitations.

---

[2] 15 U.S.C. § 1125(b) of the Lanham Act involves claims over the importation of goods. As the Complaint and Count II singularly involve claims with respect to rental services, it is assumed that Plaintiff's reference in the title is an error.

## II.   BRIEF STATEMENT OF FACTS

The Plaintiff ASSOCIATION is a Florida not-for-profit corporation. (Complaint, Ex. 1). The ASSOCIATION consists solely of members who gain membership through their ownership of a lot within the Bluewater Key RV Ownership Park (hereinafter "Bluewater Key"). (Complaint, Ex. 1-3). Bluewater Key is located adjacent to a street called "Blue Water Drive." (Complaint, Ex. 10). One must take Blue Water Drive to access the entrance to Bluewater Key. (Complaint, Ex. 10).

There are 80 individual lots within Bluewater Key. (Complaint, ¶37). Defendant CLARK has been an owner at Bluewater Key and a member of the ASSOCIATION since 1998. (Complaint, ¶83). Defendant Clark owns up to five lots. (Complaint, ¶90). All owners at Bluewater Key are allowed under the Declaration to rent out their lots. (Complaint, Ex. 3). The owners are not required to use the ASSOCIATION's services for their rentals. (Complaint, ¶¶98-99; 101). The ASSOCIATION notes that Defendant CLARK provides rental services under the name *Bluewater Rentals* to owners at Bluewater Key. (Complaint, ¶¶98-99; 101). The ASSOCIATION alleges that Defendant CLARK has attended most of the meetings of the ASSOCIATION at Bluewater Key from 1998 to the present. (Complaint, ¶89).

The 13 service marks alleged in the ASSOCIATION's Complaint refer to 11 common law service marks, one federally registered mark for *Bluewater Key* dated February 3, 2015 and one Florida registered mark for *Bluewater Key A Luxury RV Resort* dated March 19, 2013. (Complaint, ¶¶57; 59; 70).  All of the ASSOCIATION's 11 common law marks pertain to various versions of either *Bluewater Key* or *Bluewater Key A Luxury RV Resort* as used in relation to the provision of rental services at Bluewater Key. (Complaint, ¶57). The ASSOCIATION does not separate out or specify the dates of first use for each of the 11 common

law service marks in relation to its rental services at Bluewater Key. Further, the ASSOCIATION provides conflicting information of 1989 and 1999 as the dates the ASSOCIATION began use of the *Bluewater Key* mark as a source for the provision of rental services at Bluewater Key.  (Complaint, ¶33; Ex. 15).

The ASSOCIATION is silent as to when Defendant CLARK's use of *Bluewater Rentals* began. The ASSOCIATION infers that Defendant began using the Bluewater Rentals mark to provide rental services at Bluewater Key sometime after 1999. (Complaint, ¶¶95-99).  At a minimum, Defendant CLARK's federal registration for *Bluewater Rentals* indicated that Defendant used her mark to provide rental services at Bluewater Key since at least January 2002. (Complaint, Ex. 63).  The ASSOCIATION does not identify the date that Defendant's alleged infringements of the ASSOCIATION's 13 marks began. The ASSOCIATION infers that Defendant's use of the *Bluewater Rentals* mark to provide rental services at Bluewater Key sometime after 1999 was an infringement of its marks.  (Complaint, ¶¶95-99).  The ASSOCIATION alleges an incident of actual confusion between the ASSOCIATION and Defendant from six years ago on March 10, 2009. (Complaint, Ex. 57).

Despite Defendant CLARK's regular attendance at ASSOCATION meetings over the last 17 years; her continued use over the last 12 years of the *Bluewater Rentals* mark to provide rental services at Bluewater Key; and the alleged incident of actual confusion from six years ago; the very first demand sent by the ASSOCIATION to Defendant CLARK regarding her use of the Bluewater Rentals mark at Bluewater Key was on August 12, 2014. Assuming the facts in the ASSOCIATION's Complaint as true, the demand was sent at least 12 years after Defendant CLARK began using *Bluewater Rentals* for her rental services at Bluewater Key in 2002.

### III.   MEMORANDUM OF LAW

#### A.   Consideration of Motions to Dismiss for Failure to State a Claim under 12(b)(6) and Motions to Dismiss for Lack of Standing Under 12(b)(1).

The Court employs the *Twombly–Iqbal* plausibility standard when reviewing a complaint subject to a motion to dismiss. *Randall v. Scott,* 610 F.3d 701, 708, n. 2 (11th Cir. 2010). The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca–Cola Co.,* 578 F.3d 1252, 1261 (11th Cir. 2009) *Sinaltrainal,* 578 F.3d at 1261 (citing *Iqbal,* 556 U.S. at 678) *abrogated on other grounds by Mohamad v. Palestinian Auth.,* 80 U.S. 4339, 132 S.Ct. 1702, 182 L.Ed.2d 720 (2012). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678. (internal quotation marks omitted). Thus, "the-defendant-unlawfully harmed me accusation" is insufficient. *Iqbal,* 556 U.S. at, 677.

The Court must accept all factual allegations as true and take them in the light most favorable to the plaintiff. *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir. 2008). A court should make reasonable inferences in plaintiff's favor, but is "not required to draw plaintiff's inference." *Sinaltrainal,* 578 F.3d at 1260, *abrogated on other grounds by Mohamad v. Palestinian Auth.,* 80 U.S. 4339, 132 S.Ct. 1702, 182 L.Ed.2d 720 (2012). Conclusory allegations including legal conclusions couched as factual allegations and unsupported

conclusions of mixed law and fact, are not entitled to a presumption of truth. *See Iqbal,* 556 U.S. at 679. (discussing a Rule 12(b)(6) dismissal); *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (courts are not "bound to accept as true a legal conclusion couched as a factual allegation."). Bare assertions that "amount to nothing more than a 'formulaic recitation of the elements' of a claim are considered conclusory and not entitled to be assumed true. *Iqbal,* 556 U.S. at 680. Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. To be clear, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal,* 556 U.S. at 679 (citing *Twombly,* 550 U.S. at 556). Further, the court is not required to accept factual claims that are internally inconsistent. *Campos v. I.N.S.,* 32 F.Supp.2d 1337, 1343 (S.D. Fla. 1998) (citations omitted). Factual allegations that are contradicted by other allegations in the complaint may be considered "clearly baseless". *See Battle v. Central State Hosp.,* 898 F.2d 126, 130 n. 3 (11th Cir. 1990).

A Court may look to the exhibits attached to the Complaint when considering a motion to Dismiss. *See Solis–Ramirez v. US. Dept. of Justice,* 758 F.2d 1426, 1430 (11th Cir. 2009) (the Court may examine the exhibits that are attached to the complaint when considering a Motion to Dismiss). It is the law in this Circuit that "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (quoting *Griffin Industries, Inc. v. Irvin,* 496 F.3d 1189, 1206 (11th Cir. 2007)) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."); *see also Simmons v. Peavy–Welsh Lumber Co.,* 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control."). Where the allegations of a complaint are expressly

contradicted by the plain language of an attachment to that complaint, the attachment controls, and the complaint allegations are nullified. *Degirmenci v. Sapphire–Fort Lauderdale, LLLP,* 693 F.Supp.2d 1325, 1341 (S.D. Fla. 2010) (citation omitted).

> **2.      *A Rule 12(b)(1) Motion to Dismiss for Lack of Standing should be analyzed similar to a 12(b)(6).***

Motions challenging standing attack the Court's subject matter jurisdiction and are therefore considered pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Doe v. Pryor,* 344 F.3d 1282, 1284 (11th Cir. 2003). If a party lacks standing to bring a matter before the court, the court lacks jurisdiction to decide the merits of the underlying case. *Nat'l Franchisee Ass'n v. Burger King Corp.*, 715 F. Supp. 2d 1232, 1238 (S.D. Fla. 2010). As Defendant is challenging the ASSOCIATION's standing on the allegations of the Complaint, it is a facial attack. See *Morrison v. Amway Corp.,* 323 F.3d 920, 924 n. 5 (11th Cir. 2003) (Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint…factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings). Thus, the court's analysis is the same as pursuant to a 12(b)(6) Motion to Dismiss. See *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007).

**B.      The ASSOCIATION's Shotgun Complaint Must be Dismissed as Shotgun Pleadings are Altogether Unacceptable in the Eleventh Circuit.**

Plaintiff ASSOCIATION's Complaint is 204 paragraphs with the allegations of each successive count re-incorporated into the next. Specifically, at ¶150, Count II re-incorporates all of the general allegations in the Complaint (¶¶1-80) with the allegations of Count I (¶¶81-149). Count III re-incorporates the general allegations, as well as Count I and Count II.  Count IV does the same with the addition of the allegations of Count III. Count V has the benefit of the re-allegation of every allegation as well as all four previous Counts. Thus Count V contains 193

paragraph allegations, Count IV has 189 allegations, Count III has 186 allegations and Count II has 166 paragraph allegations. Plaintiff's Complaint here "is a perfect example of shotgun pleading. It incorporates every allegation by reference into each subsequent claim for relief." *Perret v. Wyndham Vacation Resorts, Inc.,* 846 F.Supp.2d 1327, 1334 (S.D. Fla. 2012); *accord Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1295 (11th Cir. 2002) (explaining that a shotgun complaint "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts ... contain irrelevant factual allegations and legal conclusions").  It is axiomatic that a party may not incorporate all allegations of each count in every successive count. *Magluta v. Samples,* 256 F.3d 1282, 1284 (11th Cir. 2001); *Cramer v. State of Florida,* 117 F.3d 1258, 1263 (11th Cir. 1997).

The Eleventh Circuit has had much to say about shotgun pleadings, none of which is favorable. *See, e.g., Davis v. Coca–Cola Bottling Co.,* 516 F.3d 955, 979 n. 54 (11th Cir. 2008) ("[S]ince 1985 we have explicitly condemned shotgun pleadings upward of fifty times."); *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1295 n. 9 (11th Cir. 2002) ("This court has addressed the topic of shotgun pleadings on numerous occasions in the past, often at great length and always with great dismay."); *Byrne v. Nezhat,* 261 F.3d 1075, 1131 (11th Cir. 2001) ("Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice."); *Anderson v. District Bd. of Trs. of Central Fla. Cmty. Coll.,* 77 F.3d 364, 367 (11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice."). To that end, in the Eleventh Circuit, shotgun pleadings of this sort are "altogether unacceptable." *Cramer v. State of Fla.,* 117 F.3d 1258, 1263 (11th Cir. 1997).

A motion to dismiss is a proper vehicle to address Plaintiff's shotgun Complaint. *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126-27 (11th Cir. 2014) (a defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6) or for a more definite statement pursuant to Rule 12(e) on the ground that the complaint provides it with insufficient notice to enable it to file an answer.) As such, Plaintiff's Complaint must be dismissed as a shotgun pleading.

**C.**    **The ASSOCIATION Fails to Plead Authorization by a ¾ Vote of the Membership to Bring this Action as Required by the Declaration.**

Plaintiff ASSOCIATION is a Florida not-for-profit corporation that exists and acts solely on behalf of its membership, the owners at the RV Park. Despite this reality, there is not a single allegation, conclusory or otherwise, within the 207 paragraphs of the Complaint alleging that the ASSOCIATION has the authority to file this lawsuit against one of its members, Defendant CLARK. The ASSOCIATION doesn't even make a general allegation that any and all conditions precedent to bringing this lawsuit have been met, not that such an allegation would have satisfied the burden under these circumstances.

Article IV, Section 7 of the Declaration of Restrictions and Protective Covenants for Bluewater Key RV Ownership Park ("Declaration"), provides a limit on the authority of the ASSOCIATION by specifically requiring a ¾ vote of the membership prior to initiating any lawsuit:

> APPROVAL OF CORPORATION LAWSUITS BY OWNERS: Notwithstanding anything contained herein, in the Articles of Incorporation, or in the By-Laws of the Association to the Contrary, the Association shall be required to obtain the approval of three fourths (3/4) of all owners prior to the employment, payment of legal or other fees to persons or entities engaged by the Association for the purpose of suing, or making, preparing or investigating any lawsuit, or commencing any lawsuit, other than for the following purposes….

(*Complaint Ex. 3*: Declaration, Art. IV, Sec.7). The enumerated areas of authority not requiring a ¾ vote of the membership, involve the collection of assessments and other charges required under the Declaration and the enforcement of the use and occupancy restrictions. The ASSOCIATION's instant lawsuit for infringement and unfair competition against Defendant CLARK is not for the collection of assessments and other charges nor is it specific to the enforcement of the use and occupancy restrictions of the Declaration. To the contrary, the owners at Bluewater Key are allowed under the Declaration to rent out their lots and are not required to use the ASSOCIATION's services for their lot rentals. As the ASSOCIATION provides rental services to owners of 45 of the total 80 lots at Bluewater Key, the ASSOCIATION's lawsuit against Defendant Clark could be reasonably interpreted as an attempt to unreasonably restrict the Bluewater Key Owners' right to choose an alternative provider of rental services.

As the ASSOCIATION, through Exhibit 3, has pled that a ¾ vote of the membership is required for standing to initiate this lawsuit, it is incumbent upon the ASSOCIATION to now plead such authorization by the membership. The ASSOCIATION's failure to plead its standing through authorization by a ¾ vote mandates that the Complaint be dismissed.  See *Rogers v. United States*, 109 Fed. Cl. 280, 288 (2013) (Motion to Dismiss claims of Florida Homeowners Association where covenants required a vote of three-fourths of Association's members before Association could initiate an action and Association did not indicate if such a vote was obtained).

**D.   The Plaintiff ASSOCIATION's Claims in Counts I, II, III, IV and V must be dismissed as the Plaintiff has Failed to Plausibly Plead a Valid and Protectable Mark in its 11 common law Service Marks or its two registered marks.**

      **1.**    ***Counts I, II, III, IV and V of the Complaint are all interdependent upon the ASSOCIATION having plausibly pled valid and protectable marks.***

In order to establish a claim of federal trademark infringement of the federally registered mark in Count I (15 U.S.C. §1114) the ASSOCIATION "must show that (1) it owns a valid and protectable mark, and (2) the defendant's use of the mark is likely to cause confusion." *Nane Jan v. Seasalt and Pepper*, 2014 WL 5177655 at 2 (*citing Custom Mfg. & Eng'g, Inc. v. Midways Servs., Inc.,* 508 F.3d 641, 647 (11th Cir. 2007));  The same is required to be established by the ASSOCIATION in its federal unfair competition claims in Count II (15 U.S.C. § 1125(a)) based upon a federally registered mark. *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.,* 106 F.3d 355, 358 (11th Cir. 1997) (To establish a prima facie case under § 1125(a), a plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it "such that consumers were likely to confuse the two."). Similarly, as the ASSOCIATION's Florida common law infringement and unfair competition claims in Counts III and IV are based on infringement, the test is the same as that for federal trademark and unfair competition as noted above. *Investacorp, Inc. v. Arabian Inv. Banking Corp*., 931 F.2d 1519, 1521 (11th Cir. 1991) (Federal service mark infringement claim is a measuring stick for the additional Florida common law infringement and unfair competition claims raised.). Lastly, the ASSOCIATION's FDUTPA claim in Count V which is premised on infringement "rises or falls on the success of its trademark infringement ... claim[ ]." *Suntree Techs., Inc. v. Ecosense, Int'l, Inc.,* 802 F.Supp.2d 1273, 1279 (M.D. Fla. 2011) (quoting *Natural Answers, Inc. v. SmithKline Beecham Corp.,* 529 F.3d 1325, 1333 (11th Cir. 2008)), aff'd, 693

F.3d 1338 (11th Cir. 2012); *Pepsico, Inc. v. Distribuidora La Matagalpa, Inc.,* 510 F.Supp.2d

1110, 1114 (S.D. Fla. 2007) (applying trademark infringement analysis to FDUTPA).

Thus, the ASSOCIATION's failure to establish an element of its federal and common

law trademark infringement claim will extinguish the Florida claims. *Pandora Jewelers 1995,*

*Inc. v. Pandora Jewelry, LLC*, 2011 WL 2174012, at 16 (S.D. Fla. 2011) (citing *Custom Mfg. &*

*Eng'g, Inc.,* 508 F.3d at 653).

> **2.    *The ASSOCIATION has failed to plead a protectable service mark in that the***
> ***common element Bluewater in all of the service marks is Geographically***
> ***Descriptive and lacks the requisite distinctiveness.***

Trademark protection "is only available to distinctive marks, that is, marks that serve the

purpose of identifying the source of the goods or services." *Knights Armament Co. v. Optical Sys.*

*Tech., Inc.,* 654 F.3d 1179, 1188 (11th Cir. 2011) (quoting *Welding Servs., Inc. v. Forman,* 509

F.3d 1351, 1357 (11th Cir. 2007)). *See also Tana v. Dantanna's,* 611 F.3d 767, 773 (11th Cir.

2010). The strength and distinctiveness of the plaintiff's mark is a vital consideration in

determining the scope of protection it should be accorded. *John H. Harland Co. v. Clarke*

*Checks, Inc.,* 711 F.2d 966, 973 (11th Cir. 1983). When determining whether a mark is

distinctive, courts first must classify the mark as either (1) generic, (2) descriptive, (3) suggestive,

or (4) arbitrary or fanciful. *Investacorp,* 931 F.2d at 1522.

Suggestive and arbitrary or fanciful marks "are deemed inherently distinctive and are

entitled to protection." *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768, 112 S.Ct. 2753,

120 L.Ed.2d 615 (1992). On the opposite end of the scale, a generic mark suggests the basic

nature of the service but is silent as to its source. *See Leigh v. Warner Bros.,* 212 F.3d 1210,

1216 (11th Cir. 2000); *Investacorp,* 931 F.2d at 1522 (using the term "Milk Delivery" to

exemplify a generic service mark for a hypothetical milk delivery service). A mark that is

generic is typically incapable of achieving service mark protection because it has no distinctiveness. *Investacorp,* 931 F.2d at 1522. Because a generic term is incapable of achieving service mark protection, no analysis of secondary meaning is necessary. "[T]he distinction between descriptive and generic terms is necessarily one of degree." *Vision Center v. Opticks, Inc.,* 596 F.2d 111, 115 (5th Cir. 1979).

A descriptive mark identifies a characteristic or quality of an article or service, such as its color, odor, function, dimensions, or ingredients. *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC,* 605 F.3d 931, 938 (11th Cir. 2010). A descriptive mark is not inherently distinctive and receives protection only if it acquires secondary meaning. *Coach House Rest, Inc. v. Coach & Six Restaurants, Inc.,* 934 F.2d 1151, 1560 (11th Cir. 1991). A subset within the range of descriptive marks is geographically descriptive marks, which "can indicate any geographic location on earth, such as continents, nations, regions, states, cities, streets and addresses, areas of cities, rivers, and any other location referred to by a recognized name," and are treated like other descriptive marks. *See Great S. Bank v. First S. Bank,* 625 So.2d 463, 468 (Fla. 1993) (quoting 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §§14. 01, 14. 02, 14.02[1], 14.03 (3d. ed.1992)). A geographically descriptive mark is generally considered not inherently distinctive, but weak, and given a narrow range of protection." *HBP, Inc. v. American Marine Holdings, Inc.,* 290 F.Supp.2d 1320, 1328 (M.D. Fla. 2003).

The 13 service marks alleged in the Complaint refer to 11 common law marks (Complaint ¶57), one federally registered mark (Complaint ¶70), and one Florida registered mark (Complaint ¶59). All of the ASSOCIATION's marks pertain to various versions of either *Bluewater Key* or *Bluewater Key a Luxury RV Resort* as used in relation to the provision of rental

services at the Bluewater Key RV Ownership Park. As referenced above the Bluewater Key RV Ownership Park is located adjacent to a street called "Blue Water Drive." Exhibit 10, as attached to the Complaint contains a map of the RV Park and it references Blue Water Drive.[3] In fact, the Bluewater Key RV Ownership Park cannot be accessed without traveling through Blue Water Drive. Bluewater Key RV Ownership Park is both descriptive of what it is and where it is.  It does not require a leap of logic to infer that the developer named Bluewater Key RV Ownership Park after the adjacent street Blue Water Drive. *Gulf Coast Commercial Corp. v. Gordon River Hotel Associates*, 2006 WL 1382072, at 6 (M.D. Fla. 2006) ("Logic compels the conclusion that the Inn on Fifth mark is either descriptive or geographically descriptive. Upon observation of the mark, the public would logically conclude that the mark indicated the type of services offered and the place from which those services originate.").

The Bluewater marks themselves are all references to the *location* of the RV Park and by extension, the location of the ASSOCIATION's rental services at the RV Park. As such, the ASSOCIATION's 13 marks which incorporate the geographic descriptive term Bluewater named after the adjacent street Blue Water Drive are not inherently distinctive and may only be protectable upon a showing of acquired secondary meaning.

**3.**      ***A presumption of inherent distinctiveness on the sole federally registered mark has been rebutted by evidence within the Complaint regarding its geographically descriptive nature.***

The ASSOCIATION's only federally registered mark, *Bluewater Key*, carries a rebuttable presumption of validity under the Lanham Act. However, while a presumption of validity is accorded to marks registered under the Lanham Act, 15 U.S.C. §§1057(b), 1115(a),

---

[3] The court may also take judicial notice of Blue Water Drive on a map. As to matters of geography, the court may take judicial notice of maps. *United States v. Proch,* 637 F.3d 1262, 1266 n. 1 (11th Cir. 2011). In particular, Courts have taken judicial notice of information obtained specifically from Google maps. *See Cobb Theaters v. AMC Entertainment Holdings,* 2015 WL 1812832 (N.D. Ga. 2015).

"this presumption is rebuttable and may be overcome by establishing the generic or descriptive nature of the mark." *Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 119 (5th Cir. 1979). That presumption "is easily rebuttable" since it merely shifts the burden to the alleged infringer. *Custom Vehicles, Inc. v. Forest River, Inc.* 476 F.3d 481, 486 (7th Cir. 2007); *see also Persha v. Armour & Co.,* 239 F.2d 628, 630 (5th Cir. 1957) ("[R]egistration of a trade-mark in accordance with federal or state law creates a prima facie, rebuttable presumption that the one registering the mark is its owner, and that the trade-mark is valid."). Further, this rebuttable presumption of validity does not extend to a presumption of secondary meaning, unless it can be shown that the USPTO has required proof of secondary meaning during the application process. *Welding Services, Inc. v. Forman,* 509 F.3d 1351, 1357 n. 3 (11th Cir. 2007). If proof of secondary meaning was not required by the USPTO, the presumption is that the mark is inherently distinctive and subject to a challenge demonstrating otherwise. *Id.* The ASSOCIATION's *Bluewater Key* USPTO application is attached within Exhibit 67 (at sub-exhibit 2) and it is clear on its face that no proof of secondary meaning was included with the application. As such, the evidence presented from the attachments to the Complaint that Bluewater Key RV Ownership Park and by extension the *Bluewater Key* marks are geographically descriptive and named after their location on Blue Water Drive rebuts the presumption of inherent distinctiveness for the federal registered *Bluewater Key* mark.

4.      ***The ASSOCIATION has failed to plead sufficient facts necessary to allege acquired secondary meaning on the 13 Bluewater Service Marks as of the date of Defendant's alleged infringement.***

The factual deficiencies in the ASSOCIATION's Complaint become evident when viewed in light of the necessity to plead acquired secondary meaning for all 13 of the alleged service marks.  There are four factors used to determine whether a descriptive mark has acquired

secondary meaning:

> (1) The length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's product or business; and (4) the extent to which the public actually identifies the name with the plaintiff's product or venture.

*Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1513 (11th Cir. 1984). Conclusory allegations regarding secondary meaning are not sufficient to survive a motion to dismiss. *Tropic Ocean Airways, Inc., v. Julie Floyd, Key West Seaplane Service, Inc.*, 598 Fed. Appx. 608 (S.D. Fla. 2014). Further, the ASSOCIATION must establish that secondary meaning was established prior to the date that Defendant CLARK began using the similar marks. *See Gulf Coast Commercial Corp. v. Gordon River Hotel Assoc.*, 2006 WL 1382027 (M.D. Fla. 2006) (Secondary meaning must be established before the date that the other party began using the similar term) (citing *Investacorp,* 931 F.2d at 1524).

In paragraph 79 of the Complaint, the ASSOCIATION makes a general conclusory statement that, "Plaintiff's Federally Registered Mark, Plaintiff's State Registered Mark, and Plaintiff's Common Law Marks are distinctive and/or Plaintiff's Marks have acquired distinctiveness."  Further, in paragraph 77 of the Complaint, the ASSOCIATION alleges in conclusory fashion that it "has expended financial resources and efforts to promote Plaintiff's Federally Registered Mark, Plaintiff's State Registered Mark, and Plaintiff's Common Law Marks."  The ASSOCIATION fails to break out and address each of the 13 claimed marks separately to allege when each of the marks acquired secondary meaning. The ASSOCIATION fails to provide specific allegations as to when the ASSOCIATION began using each of the 13 marks in commerce, let alone when each mark acquired secondary meaning through use. Rather,

the ASSOCIATION attempts to bootstrap the 13 separate marks together in blanket allegations without any specificity as to each mark individually.

The ASSOCIATION's lack of sufficiently pled facts in the Complaint leads to a contradictory and often confusing timeline as to the length and manner of the use of the 13 marks. It is difficult to determine exactly when the ASSOCIATION began using the marks in connection with the rental services, even the *Bluewater Key* mark. The ASSOCIATION alleges that it has used the *Bluewater Key* mark with respect to rental services as early as 1989, yet there is a letter from the ASSOCIATION president dated September 9, 1999 where reference is made to negotiations with another company to turn the rental business over to the park. (Complaint, Ex. 15). The ASSOCIATION alleges that it has used the shortened trade name "Bluewater Key" since 1990, yet the ASSOCATION filed its application to use "Bluewater Key" as a fictitious name on January 4, 2013 as reflected in the Florida Division of Corporations records at sunbiz.org.[4] The ASSOCIATION alleges that it first began using the Florida registered mark on January 1, 2000. (Complaint, ¶63; Ex. 52).

Adding to the general confusion in the Complaint, the ASSOCIATION attaches exhibits that fail to provide clarity into the nature and extent of the advertising and promotion with respect to each mark as used in connection with the ASSOCIATION's rental services. In paragraph 48 of the Complaint, while the ASSOCIATION alleges that it has "advertised in Plaintiff's newsletter," the copies of the newsletter attached as Exhibits 17 and 18, do not contain any such advertisement, nor is there an illustrative use of any of the ASSOCIATION's marks

---

[4] Courts may judicially notice matters of public record without converting a 12(b)(6) motion to dismiss into a motion for summary judgment under Rule 56. *Halmos v. Bomardier Aerospace Corp.,* 404 Fed.Appx. 376, 377 (11th Cir. 2010); *See Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1278 (11th Cir. 1999). Public records that are subject to judicial notice by the Court include Florida Department of State, Division of Corporation records on Sunbiz.org. *Wilson v. Arizona Classic Auto,* 2009 WL 3762983 at fn1 (S.D. Fla. 2009) (Court takes judicial notice of resident agent status and corporate officer status of Defendant as listed on sunbiz.org.)

with respect to providing rental services. Additionally, Exhibit 8 to the Complaint, is identified in paragraphs 35 through 37 as an advertisement of the ASSOCIATION's services to the general public in 1989. A plain reading of Exhibit 8, however, shows that it is clearly an advertisement by the developer to *sell* lots at Bluewater Key, a service that the ASSOCIATION does not provide.   Paragraph 55 of the Complaint references Exhibits 19-32 and 34-50 as "current advertisements" on the premises, however, none of the attached 29 exhibits show the use of the ASSOCIATION's marks specifically advertising rental services. To the contrary, the Exhibits with some iteration of the *Bluewater* mark show the marks used as a geographic indication of place, rather than an indication of provided services. Further, half of these Exhibits do not contain any marks at all and appear to be an irrelevant visual tour of the Bluewater Key RV Park. Further, the majority of the allegations regarding advertising of the 13 marks illustrate the ASSOCIATION's current efforts only. (Complaint, ¶¶14; 50; 54-56).

The ASSOCIATION's allegations of its current advertising efforts say nothing as to whether secondary meaning had been established on each of the service marks prior to Defendant CLARK's initial use of the *Bluewater* mark. Similarly, the ASSOCIATION's Complaint is entirely silent as to exactly when Defendant CLARK began using her alleged infringements. The ASSOCIATION infers that Defendant's use of the *Bluewater Rentals* mark sometime after 1999 was an infringement of its marks. However, despite Defendant CLARK's regular attendance at ASSOCIATION meetings since 1998, Defendant's continued use of the *Bluewater Rentals* mark since at least 2002, and the alleged evidence of actual confusion in 2009, the very first demand sent by the ASSOCIATION to Defendant CLARK regarding her use of the *Bluewater Rentals* mark at Bluewater Key was on August 12, 2014. (Complaint, Ex. 67).

The ASSOCIATION's Complaint pleads nothing but conclusory and often confusing allegations regarding acquired secondary meaning for its two registered marks and 11 common law marks, and as such, has failed to state a claim. *Tropic Ocean Airways, Inc.*, 598 Fed. Appx. at 611 (Motion to Dismiss granted where "virtually all the allegations in the amended complaint that relate to secondary meaning are conclusory.").   As such, Counts I through V should be dismissed.

**E.**   **The ASSOCIATION's FDUTPA Claim in Count V must be Dismissed as the Facts on the Face of the Complaint establish that the claim is barred by the Statute of Limitations**

Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") claims have a four-year statute of limitations. *Brown v. Nationscredit Fin. Servs. Corp.,* 32 So.3d 661, 662 n. 1 (Fla. 1st DCA 2010). The statute of limitations begins to run "when the last element constituting the cause of action occurs." *Sundance Apartments I, Inc. v. Gen. Elec. Capital Corp.,* 581 F.Supp.2d 1215, 1223 (S.D. Fla. 2008).

The ASSOCIATION's FDUTPA claim in Count V is difficult to decipher in paragraph 194 alleges that the "foregoing conduct of defendant constitutes unfair competition."  As all 192 of the previous paragraphs and counts have been incorporated into Count V, it is difficult to determine exactly to which conduct the ASSOCIATION is referring. However, as the ASSOCIATION is generally asserting a trademark claim under FDUTPA, the ASSOCIATION must prove that (1) its marks have priority, (2) Defendant CLARK used her mark in commerce, and (3) the use of Defendant's mark is likely to cause confusion. *Bureau of Dangerous Goods, Ltd. v. Hazmat Software, LLC,* 2012 WL 1288807 (M.D. Fla. 2012). The facts in the Complaint and the Exhibits show that Defendant CLARK has consistently used her *Bluewater Rentals* mark since at least 13 years ago in January 2002. In order to assert priority, the ASSOCIATION has to

allege use of their mark prior to 2002. Lastly, the ASSOCIATION alleges actual confusion on March 10, 2009, which is over six years ago. As such, the statute of limitations began to run on March 10, 2009, when the last element constituting the FDUTPA cause of action occurred. The four-year statute of limitation period on the ASSOCIATION's claim under Count V ran out in March of 2013. While the statute of limitations is usually raised as an affirmative defense, it can be addressed in a motion to dismiss where the facts contained in the complaint establish that dismissal is warranted. *See Gonsalvez v. Celebrity Cruises Inc.,* 750 F.3d 1195, 1197 (11th Cir.2013) (Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate if it is apparent from the face of the complaint that the claim is time-barred) *cert. denied* 83 U.S. 3158, 135 S.Ct. 58, 190 L.Ed.2d 32 (2014).  As such, Count V of the ASSOCIATION's Complaint must be dismissed with prejudice.

## III.   CONCLUSION

The entire Complaint should be dismissed as it constitutes an impermissible shotgun pleading and the ASSOCIATION has failed to plead the necessary authorization by a ¾ Vote of its Membership required to bring this action. Further as Counts I, II, III, IV and V are interwoven in as much as they rely on pleading a valid and protectable mark. The ASSOCIATION's 13 marks containing Bluewater are geographically descriptive of the location of Bluewater Key RV Ownership Park. The ASSOCIATION has failed to plead anything beyond conclusory allegations of acquired secondary meaning. As such, Counts I, II, III, IV and V must be dismissed. Lastly, the FDUTPA claim in Count V must be dismissed as the allegations on the face of the Complaint conclusively establish that the FDUTPA claim is time barred by Florida's Statute of Limitations.

Respectfully submitted,

By:   _/s/Steven Robert Kozlowski, Esq._
        **STEVEN ROBERT KOZLOWSKI, ESQ.**
        Fla. Bar No. 0087890
        Email: Steven@KLFPA.com

        **Kozlowski Law Firm, P.A.**
        777 Brickell Ave., Ste. 800
        Miami, Florida 33131
        Tele: (305) 673-8988 Fax: (305) 673-8668
        *Attorneys for Defendant Rita Clark*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court

using the CM/ECF on June 1, 2015, and that the foregoing Motion to Dismiss Plaintiff's

Complaint for the failure to state a claim pursuant to Rule 12(b)(6) and for lack of standing

pursuant to Rule 12(b)(1) along with an incorporated Memorandum of Law is being served this

day via transmission of Notices of Electronic Filing generated by CM/ECF to: Lee Robert Rohe,

Esq., at Lee Robert Rohe, P.A. 25000 Overseas Hwy, Suite 2, Summerland Key, FL 33042;

Arlen L. Olsen, Esq., and Autondria S. Minor, Esq., at Schmeiser, Olsen & Watts, LLP, 22

Century Hill Drive, Suite 302, Latham, NY 12110.

By:   _/s/Steven Robert Kozlowski, Esq._
        **STEVEN ROBERT KOZLOWSKI, ESQ.**
        Fla. Bar No. 0087890