# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### KEY WEST DIVISION

### CASE NO.: 15-cv-10060-JEM

|  |  |
|---|---|
| BLUEWATER KEY RV OWNERSHIP PARK PROPERTY OWNERS ASSOCIATION, INC., a Florida Corporation, | ) ) ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) ) |
| RITA CLARK, an individual, d/b/a BLUEWATER RENTALS | ) ) ) |
| **Defendant.** | ) ) |

## RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### I.    INTRODUCTION

Plaintiff, Bluewater Key RV Ownership Park Property Owners Association, Inc.

("Plaintiff") files this response to the motion to dismiss (Dkt. No. 16) by Defendant, Rita Clark

d/b/a Bluewater Rentals ("Defendant").

### II.    ARGUMENT

#### A.  Plaintiff's Complaint States a Claim Because the Factual Allegations Are Plausible on Their Face

Defendant contends that Plaintiff's Complaint should be dismissed because the pleadings

are inconsistent and contradictory.  In response, Defendant's contentions are without merit

because Plaintiff's factual allegations are plausible on their face. *See Fisher Island Club, Inc. v.*

*Arboleya Silichin Intern. Mktg., LLC*, 2015 WL 759521, *3 (S.D. Fla. Feb. 23, 2015) (finding

substantial likelihood of confusion between the developer's marks, Fisher Island and Fisher

Island Club and Defendant's marks, Fisher Island and Fisher Magazine); *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 804-811 (Tex. Ct. App. 2001) (defendant registering the domain name, horseshoebay.com which included the developer's trademark, Horseshoe Bay). Defendant diverts customers from Plaintiff. Dkt. No. 6 ¶¶ 13, 14, 18, 54, 55, 97-100, 102, 107-109, 112, 115, 130, 131, 133-135, 143, 144; Dkt. No. 1-8 at 2-6. "The Eleventh Circuit notes that confusion of actual customers of a business is worthy of substantial weight." *Fisher Island Club, Inc.*, 2015 WL 759521, *3; Dkt. No. 6 ¶¶ 137-142, 158; Dkt. No. 1-58 at 2-4. Plaintiff alleges damages to Plaintiff's business reputation and goodwill. Dkt. No. 6 ¶¶ 125-127, 136, 146-149. Plaintiff alleges damages from Defendant's trademark infringement, false advertisement, and unfair competition. Dkt. No. 6 ¶¶ 13, 14, 18, 54, 55, 63-70, 85, 97-115, 121-123, 125, 130, 131, 133-144, 146-149, 153, 154, 156, 158, 159, 183; Dkt. No. 1-55 at 2; Dkt. No. 1-59 at 2, 3; Dkt. No. 1-63 at 2-5; Dkt. No. 1-54 at 2; Dkt. No. 1-60 at 2; Dkt. No. 1-61 at 2, 3; Dkt. No. 1-62 at 2; Dkt. No. 1-25; Dkt. No. 1-26 at 2; Dkt. No. 58 at 2.

### B. Plaintiff Has Standing under the Lanham Act Because Plaintiff Is Within the Zone of Interest and Plaintiff's Injuries Are Proximate

Defendant contends that Plaintiff lacks standing based on the allegations in the Complaint. Defendant cites several cases in support of Defendant's position. The case, *Doe v. Pryor*, 344 F.3d 1282, 1284 (11th Cir. 2003), is readily distinguished because it involved an issue of a plaintiff's standing to challenge the constitutionality of a state statute in federal court. The case, *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003) is readily distinguishable since it concerned whether the plaintiff was an "eligible employee" within the meaning of a federal medical leave statute. The case, *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007), is distinguishable because it involved whether the federal court had jurisdiction to hear a qui tam action under the False Claims Act by

a plaintiff against a county. The case, *Nat'l Franchisee Ass'n v. Burger King Corp.*, 715 F.Supp.2d 1232, 1238 (S.D. Fla. 2010), involved Burger King Corp.'s ability to set a price of a double meat burger that franchisees will sell to consumers. The *Nat'l Franchisee Ass'n* case did not involve issues concerning the Lanham Act.

In the case, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, the U.S. Supreme Court "granted certiorari to decide the appropriate analytical framework for determining a party's standing to maintain an action for false advertisement under the Lanham Act." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1385 (2014). The U.S. Supreme Court indicated that there is "irreducible constitutional minimum of standing" derived "[f]rom Article III's limitation of judicial power to resolving 'Cases' and 'Controversies' and the separation-of-powers principles underlying that limitation." *Id.* at 1386. "The plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Id.* Lexmark did "not deny that Static Control's allegations of lost sales and damage to" Static Control's "business reputation" gave Static Control "standing under Article III to press its false advertising claim." *Id.* The U.S. Supreme Court was satisfied that such allegations by Static Control did give Static Control standing under Article III. *See Id.* Static Control's claim for false advertisement presented a case or controversy that was properly within the federal court's Article III jurisdiction. *See Id.*

Although Static Control's claim for false advertisement presented a case or controversy that was properly within the federal court's Article III jurisdiction, Lexmark urged the federal courts to "decline to adjudicate Static Control's" false advertisement "claim on grounds that" were "'prudential', rather than constitutional." According to the U.S. Supreme Court, the federal

3

courts have an obligation to hear and decide cases within their jurisdiction. *See Id.*  A federal court "cannot limit a cause of action that Congress has created merely because 'prudence' dictates." *Id.* at 1388.  The U.S. Supreme Court held that "a direct application of the zone of interests test and the proximate-cause requirement" supplied "the relevant limits on who may sue." *Id.* at 1391.  With respect to the zone of interest, the question is whether a plaintiff falls within the class of plaintiffs whom Congress has authorized to sue under §1125(a). *See Id.* at 1387.  The Lanham Act authorizes suit by "any person who believes that he or she is likely to be damaged by a defendant's false advertisement." *Id.* at 1388.  The U.S. Supreme Court held that "to come within the zone of interests in a suit for false advertisement under §1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 1390.

Regarding the proximate-cause requirement, "a plaintiff suing under §1125(a) ordinarily must show economic or reputational injury" flowing "directly from deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 1382.  "Potential difficulty in ascertaining and apportioning damages is not . . . an independent basis for denying standing where it is adequately alleged that a defendant's conduct has proximately injured an interest of the plaintiff's that the statute protects." *Id.* at 1392.  "In a sense, of course, all commercial injuries from false advertising are derivative of those suffered by consumers who are deceived by the advertising." *Id.* at 1382.  "[S]ince the Lanham Act authorizes suit only for commercial injuries," the intervening step of consumer deception "is not fatal to the showing of proximate-cause showing." *Id.*  "Even when a plaintiff cannot quantify its losses with sufficient certainty to recover damages, it may still be entitled to injunctive relief under §1116(a) (assuming it can prove likelihood of future injury) or disgorgement of the defendant's ill-gotten profits under

§1117(a)." *Id.* at 1392.  The Lanham Act treats false advertisement as a form of unfair competition. *See Id.*  Lanham Act protection extends, but is not limited to, false-advertiser's direct competitors. *See Id.*

Plaintiff has constitutional standing and this Court has subject matter jurisdiction under Article III to hear the claims of trademark infringement, false advertisement, and unfair competition.  Plaintiff has alleged diversion of customers (Dkt. No. 6 ¶¶ 13, 14, 18, 54, 55, 97-100, 102, 107-109, 112, 115, 130, 131, 133-135, 143, 144) and damages to Plaintiff's business reputation and goodwill (Dkt. No. 6 ¶¶ 125-127, 136, 146-149).  Plaintiff comes within the zone of interests in a suit for trademark infringement, false advertisement, and unfair competition under §1125(a) because Plaintiff has alleged an injury to a commercial interest in reputation.  Dkt. No. 6 ¶¶ 13, 14, 99, 100, 102, 106-109, 112, 115, 125-127, 130, 131, 133-136, 143, 146-149, 153, 154, 159, 163-167.  For instance, Plaintiff has pled that "Plaintiff has incurred damages as a result of Defendant's use of Defendant's Marks. Dkt. No. 6 ¶ 143.  Plaintiff has pled that "Defendant's conduct harms the goodwill and reputation that Plaintiff has built up in Plaintiff's Federally Registered Trademark, Bluewater Key of U.S. Trademark Registration No. 4,680,453.  Dkt. No. 6 ¶ 149.  Further, Plaintiff has alleged economic injury (Dkt. No. 6 ¶¶ 13, 14, 18, 54, 55, 97-100, 102, 107-109, 112, 115, 130, 131, 133-135, 143, 144) or reputational injury (Dkt. No. 6 ¶¶ 125-127, 136, 146-149), flowing directly from Bluewater Rentals' deception and infringing activities, based on Rita Clark's advertising.  Plaintiff has pled that "Defendant's *use* of Defendant's Marks is likely to cause potential customers to believe that Defendant and Applicant are affiliated when they are not." Dkt. No. 6 ¶ 127.  Plaintiff has pled that Defendant uses confusingly similar trademarks, similar domain names as well as an email address with Plaintiff's, trademark, Bluewater Key, to divert customers away from Plaintiff. Dkt. No. 6 ¶¶ 25-

27, 63-70, 85, 97-115, 121-123, 125, 130, 131, 133-144, 146-149, 153, 154, 156, 158, 159, 183; Dkt. No. 1-55 at 2; Dkt. No. 1-59 at 2, 3; Dkt. No. 1-63 at 2-5; Dkt. No. 1-54 at 2; Dkt. No. 1-60 at 2; Dkt. No. 1-61 at 2, 3; Dkt. No. 1-62 at 2; Dkt. No. 1-25; Dkt. No. 1-26 at 2; Dkt. No. 58 at 2. Customers mistakenly complain to Plaintiff regarding the rental services of Defendant, which causes consumers to withhold trade from Plaintiff. Dkt. No. 6 ¶¶ 134-136. Plaintiff and Defendant are direct competitors which supports proximate cause. Dkt. No. 6 ¶¶ 13, 14, 18, 54, 55, 97-100, 102, 107-109. Plaintiff has plead that "Defendant offers and provides recreational vehicle services to customers in the same physical recreational vehicle park, Bluewater Key RV Park." Dkt. No. 6 ¶ 103. Plaintiff has alleged that "Defendant is directly competing with Plaintiff by providing identical and/or related services. Dkt. No. 6 ¶ 108; Dkt. No. 6 ¶¶ 13, 14, 18, 54, 55, 97-100, 102, 107-109. Plaintiff has alleged that Defendant uses Defendant's Websites to divert customers from Plaintiff." Dkt. No. 6 ¶ 130. Plaintiff has pled that "Defendant has gained profits as a result of Defendant's use of Defendant's Mark." Dkt. No. 6 ¶ 144. Plaintiff has pled that "Plaintiff seeks a permanent injunction regarding Defendant's use of the federal registration symbol ® with the trademark, Bluewater Rentals." Dkt. No. 6 ¶ 144. Thus, Plaintiff has alleged sufficient facts to carry its burden of establishing standing at the pleading stage. *See Kroma Makeup EU, Ltd. v. Boldface Licensing +Branding, Inc.*, 2015 WL 1708757, *6 (M.D. Fla. April 15, 2015).

Plaintiff has standing to bring this suit as the owner and registrant of the trademark, Bluewater Key. *See BMW of North Am. v. Au-to. Gold, Inc.*, 1996 WL 1609124, *2-3 (M.D. Fla. June 19, 1996) (explaining that 15 U.S.C. §§ 1114 and 1127 permit trademark infringement suits to be brought by the registrant of the mark); Dkt. No. 6 ¶¶ 70-73. Plaintiff has standing based on use of the trademark, Bluewater Key at least ten years prior to Defendant. *See Lisseveld Marcus,*

173 F.R.D. 689, 694 (M.D. Fla. 1997) (providing that standing may be based on prior use of a trademark); Dkt. No. 6 ¶¶ 31-19, 20,  25-28, 31-34, 39, 40-43, 59-62, 64-66, 69, 71, 83, 84, 85, 91-100, 116-118, 121, 169-184; Dkt. No. 1-53 at 2-7; Dkt. No. 1-54 at 2; Dkt. No. 1-60 at 2; Dkt. No. 1-61 at 2, 3; Dkt. No. 1-62 at 2; Dkt. No. 1-64 at 2; Dkt. No. 1-69 at 98, 99, 101, 102, 111, 112.  Plaintiff alleges that Plaintiff owns the federally registered mark, Bluewater Key. Dkt. No. 6 ¶¶ 70-73.  Plaintiff is the owner of the mark, Bluewater Key and the certificate of registration of U.S. Trademark Registration No. 4,680,453 for Bluewater Key states that Plaintiff is the owner in the pertinent ownership section. Dkt. No. 1-55 at 2; Dkt. No. 6 ¶¶ 70-73.  The certificate of registration is prima facie evidence that Plaintiff owns the trademark, Bluewater Key. *See* 15 U.S.C. § 1057(b); Dkt. No. 6 ¶ 72.  "The owner of a trademark is the person to bring an action for the allegedly infringed rights." *Reusser v. Seidelman*, 2007 WL 2339854, *1 (M.D. Fla. Aug. 16, 2007) (citing *Lisseveld*, 173 F.R.D. at 693; *Int'l Importers, Inc. v. Int'l Spirits & Wines, LLC*, 2011 WL 7807548, *4 (S.D. Fla. July 26, 2011).  Further, unlike Section 32 (15 U.S.C. § 1117), Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) authorizes a cause of action by "any person who believes that he or she is likely to be damaged by such act." *BMW of North Am.*, 1996 WL 1609124, *3; Dkt. No. 6 ¶¶ 125-127, 130, 143-149.  Plaintiff asserts that Defendant directly competes with Plaintiff for RV lot rental services. Dkt. No. 6 ¶¶ 13, 14, 18, 54, 55, 97-100, 102, 107-109.  Therefore, Plaintiff has a commercial interest as a direct competitor and Plaintiff will be damaged by Defendant's infringement. Dkt. No. 6 ¶¶ 13, 14, 18, 54, 55, 97-100, 102, 112, 115, 131, 107-109.  As such, Plaintiff's allegations are sufficient to survive a motion to dismiss. *See BMW of North Am.*, 1996 WL 1609124, *2-3.  Plaintiff should be able to seek monetary damages and injunctive relief as the registrant and owner of the trademark, Bluewater Key.

In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, the U.S. Supreme Court cited *Camel Hair and Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6 (1st Cir. 1986) regarding proximate cause where the defendant damages the product's reputation by, for example, equating it with an inferior product. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1393 (2014). The *Camel Hair* case involved the association standing of a plaintiff to sue on behalf of the association members. *See Camel Hair and Cashmere Inst. of Am., Inc.*, 799 F.2d at 10-13. The members of plaintiff's association had a nexus to the alleged wrong of the defendant to sue in their own right. *See Id.* at 12. The court recognized that none of the five full members compete with the defendant in the sense of selling coats, and that Merin, the associate member, sell only 100% cashmere coats and is to the extent selling to a different market. *See Id.* Nonetheless, their position as manufacturers and vendors of fabric and clothing containing cashmere gave them a strong interest in preserving cashmere's reputation as a high quality fibre. *See Id.* The participation of plaintiff's individual members was not necessary to litigation injunctive relief. *See Id.* Citing *Auto. Workers Union v. Brock*, 477 U.S. 274 (1986), the *Camel Hair* case indicated that a plaintiff should not be prevented from litigating a claim for injunctive relief merely because its members' claims will have to be considered individually to determine their right to monetary relief. *See Id.*

## C. Plaintiff Has Standing in Plaintiff's Own Right as Trademark Registrant and Owner Irrespective of Whether Plaintiff Has Association Standing

Defendant contends that Plaintiff lacks standing because the Plaintiff failed to plead authorization by a ¾ vote of the membership to bring the suit. In response, Plaintiff has met standing to bring this suit as a registrant and owner of the U.S. Trademark Registration No. 4,680,453 for Bluewater Key. Dkt. No. 6 ¶ 149; Dkt. No. 1-55 at 2. Plaintiff has already met the constitutional standing under the Lanham Act by alleging customer diversion and damages. *See*

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014); Dkt. No. 6 ¶¶ 13, 14, 18, 54, 55, 97-100, 102, 107-109, 112, 115, 130, 131, 133-135, 143, 144. Plaintiff has alleged damage to business reputation and goodwill. *See Lexmark Int'l, Inc.*, 134 S. Ct. at 1386; Dkt. No. 6 ¶¶ 125-127, 136, 146-149.  The proper test for standing is "a direct application of the zone of interests test and the proximate-cause requirement." *See Lexmark Int'l, Inc.*, 134 S. Ct. at 1391.  Plaintiff has met the zone of interest requirement. Dkt. No. 6 ¶¶ 13, 14, 18, 54, 55, 97-100, 102, 107-109, 112, 115, 125-127, 130, 131, 133-136, 143, 144, 146-149.  Plaintiff has met the proximate-cause requirement. Dkt. No. 6 ¶¶ 13, 14, 18, 54, 55, 63-70, 85, 97-115, 121-123, 125, 130, 131, 133-144, 146-149, 153, 154, 156, 158, 159, 183; Dkt. No. 1-55 at 2; Dkt. No. 1-59 at 2, 3; Dkt. No. 1-63 at 2-5; Dkt. No. 1-54 at 2; Dkt. No. 1-60 at 2; Dkt. No. 1-61 at 2, 3; Dkt. No. 1-62 at 2; Dkt. No. 1-25; Dkt. No. 1-26 at 2; Dkt. No. 58 at 2.  The Declaration does not contemplate a trademark. Dkt. No. 1-6.  Alternatively, Article III, Sec. (7) (d) of the Declaration allows suit without a ¾ vote in a situation where there is substantial risk of irreparable injury. Dkt. No. 1-6 at 12, 25.  Article VII, Sect. (2)(J) of the By-Laws indicates that the Board has a duty to make certain the park is maintained in accordance with the intent and purpose set forth in the Declaration." Dkt. No. 1-7 at 11.

With respect to association standing, Plaintiff contends that there is a nexus between Defendant's sale of rental services under confusingly similar marks because the individual members rent their recreational vehicle lots through the Plaintiff's rental program to potential renters. Dkt. No. 6 ¶¶ 19, 20, 26, 27, 99-102, 106.  Some customers mistakenly believe that customers are renting from Plaintiff when the customers are renting from Defendant. Dkt. No. 6 ¶¶ 54, 55, 97-100, 102, 104-109, 112, 115, 131, 146-149.  Plaintiff's association rental program competes directly with Defendant's rental services. Dkt. No. 6 ¶¶ 13, 14, 18, 54, 55, 97-100, 102,

107-109.  At minimum, Plaintiff has standing to litigate claims regarding injunctive relief

pursuant to the case, *Auto. Workers Union v. Brock*, 477 U.S. 274, 288-290 (1986).

### D.  Defendant Has Notice of the Subsequent Claims in the Complaint Because the Claims Are Analyzed under the Same Standard

Defendant contends that Plaintiff filed a shotgun complaint that should be dismissed as

unacceptable.  Defendant contends that Plaintiff's Complaint is a perfect example of a shotgun

pleading.  Defendant states that "a shotgun complaint contains several counts, each one

incorporating by reference the allegations of its predecessors, leading to a situation where most

of the counts . . . contain irrelevant factual allegations and legal conclusions."

Many factual allegations in the succeeding counts of the Complaint are not irrelevant

since many succeeding counts are analyzed using the same standard as the first count for

trademark infringement under the Lanham Act. *See Tally-Ho, Inc. v. Coast Cmty. Coll.*, 889 F.2d

1018, 1025, 1026 (11th Cir. 1990).  Thus, resources would not be wasted by the court in this case

in determining whether there is infringement under federal statute, state law, and common law.

The intent of the Florida Statute for trademark infringement is to provide a system of state

trademark registration and protection consistent with the federal registration and protection under

the Trademark Act of 1946. *See Anderson v. Upper Keys Bus. Group, Inc.*, 61 So. 3d 1162, 1167

(Fla. App., 3d Dist. 2011).  "The elements of common law and statutory trademark infringement

are the same." *Tally-Ho, Inc.*, 889 F.2d at 1025, 1026.  "[T]he Florida statute provides little

additional protection beyond that provided at common law." *Id.* at 1022.  Sec. 495.131, Fla. Stat.

permits a trademark owner in trademark infringement suits to pursue remedies under Sec.

495.141, Fla. Stat. *See Id.* at 1024.  Common law owners of unregistered marks are limited to

common law remedies in infringement actions. *See Id.*

An unfair competition claim that is premised on common law, state and federal statutes, applies the same standards. *See Anderson v. Upper Keys Bus. Group, Inc.*, 61 So. 3d 1162, 1167 (Fla. App., 3d Dist. 2011). For example, in *Anderson v. Upper Keys Bus. Group, Inc.*, the court stated that "Anderson's unfair competition claim is premised on common law and state and federal statutes, which all apply the same standard." *Id.* A cause of action for injunctive relief on the common law of unfair competition based on tradename or trademark infringement is similar to a trademark infringement claim. *See Id.* In the *Tally-Ho, Inc.* case, the Eleventh Circuit indicated that Tally-Ho set forth a claim for unfair competition. *See Tally-Ho, Inc. v. Coast Cmty. Coll.*, 889 F.2d 1018, 1026, n. 14 (11th Cir. 1990). According to Eleventh Circuit, "[t]he district court recognized that an unfair competition claim based only upon alleged trademark infringement is practically identical to an infringement claim." *Id.* In the *Tally-Ho, Inc.* case, the Eleventh Circuit indicated that Tally-Ho was entitled to an injunction on its trademark infringement claim and the Eleventh Circuit did not need to address whether Tally-Ho was entitled to an injunctive relief on the unfair competition claim. *See Id.* The court's docket will not become unmanageable and discovery will not be uncontrolled where the court uses the same standard to analyze multiple claims in the Complaint regarding trademark infringement under federal statutes, state law, and common law. Therefore, Plaintiff requests that this Court deny the motion to dismiss the Complaint as a shotgun pleading. Should the Court dismiss the Complaint as a shotgun pleading, Plaintiff requests leave to replead. *See Perret v. Wyndham Vacations Resorts, Inc.*, 846 F.Supp.2d 1327, 1334 (S.D. Fla. 2012).

The case, *Magluta v. Samples*, 256 F.3d 1282, 1283, 1284 (11th Cir. 2001), cited by Defendant, is distinguished because it in a criminal detention case, based on several different amendments with different standards, including the First amendment free exercise clause, Eighth

Amendment pretrial detention treatment, and Fifth Amendment due process to the U.S. Constitution. In the case, *Anderson v. Dist. Bd. Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366, 367 (11th Cir. 1996), the Eleventh Circuit indicated that the plaintiff's complaint is a shotgun complaint and that it virtually impossible to know which allegations of fact are intended to support which claims. This case involved allegations under the First, Fourth, Fifth, and Thirteenth Amendments, which required analysis of different standards. The case, *Davis v. Coca Cola Bottling Co. Consol.*, 516 F.3d 955, 979 n. 54 (11th Cir. 2002) is distinguished as a civil rights discrimination case involving whether all nine plaintiffs were subjected to patterns of race discrimination and which plaintiffs possessed which cause of action. The case, *Bryne v. Nezhat*, 261 F.3d 1075, 1128, 1131 (11th Cir. 2001) is distinguished because it involved many successive counts that would be analyzed under different standards, including medical malpractice in medical procedure, RICO racketeering conspiracy claims, and lack of informed consent. The case, *Cramer v. State of Fla.*, 117 F.3d 1258, 1261, 1263 (11th Cir. 1997) is distinguished because it involved multiple plaintiffs and defendants and it was impossible for the court discern what the plaintiff was claiming under the Americans with Disabilities Act and conspiracy causes of action. The case, *Paylor v. Hartford Fire Ins. Co, Inc.*, 748 F.3d 1117, 1126 (11th Cir. 2014) is distinguished as a retaliation claim under the Family Medical Leave Act where the plaintiff's attorney conceded that the pleading did not meet the pleading standard in *Bell Alt. Corp. v. Twombly*, 550 U.S. 544 (2007) and there was unnecessary discovery.

The case, *Perret v. Wyndham Vacations Resorts, Inc.*, 846 F.Supp.2d 1327, 1330, 1335 (S.D. Fla. 2012) is factually distinguished because the plaintiff alleged breach of contract, fraud, breach of fiduciary duty, and violation of Unfair Trade Practices Act (FDUTPA) and it was impossible to know which allegations were intended to support which claims for relief. These

claims have several different standards.  Further, this was a fraud-based suit and the court could not determine from the pleadings whether the first count of the pleadings was brought under the Federal Declaratory Judgment Act, Florida Declaratory Judgment Act, or FDUTPA. *Id.*

### E. Plaintiff Has Established Valid Protectable Rights Because Plaintiff's Marks Are Inherently Distinctive

Registration of the trademark, Bluewater Key on the principal register of the USPTO is prima facie evidence of validity. *See Nane Jan, Inc. v. Seasalt and Pepper, LLC*, 2014 WL 5177655 at *3 (M.D. Fla. Oct. 14, 2014); 15 U.S.C. § 1057(b); *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007); Dkt. No. 6 ¶ 72.  The registration in the USPTO establishes a rebuttable presumption that the mark, Bluewater Key is protectable or distinctive. *See Id.*  Plaintiff alleges in the pleadings that "Plaintiff's Federally Registered Mark, State Registered Mark, and Plaintiff's Common Law Marks are inherently distinctive and/or Plaintiff's Marks have acquired distinctiveness. Dkt. No. 6 ¶ 79.  "Plaintiff alleges that the consuming public has come to know, rely, and recognize Plaintiff as the source of services, advertised, and/or marketed under Plaintiff's Federally Registered Mark, Plaintiff's State Registered Mark, and Plaintiff's Common Law Marks. Dkt. No. 6 ¶ 78.  Plaintiff alleges validity of "Plaintiff's Federally Registered Mark, State Registered Mark, and Plaintiff's Common Law Marks. Dkt. No. ¶ 80.

The coined term, Bluewater Key is inherently distinctive because the term, Bluewater Key is arbitrary with respect to "RV resort rentals services, namely, recreational vehicle (RV) park services". Dkt. No. 6 ¶ 9; Dkt. No. 1-6 at 28 compared to Dkt. No. 1-13 at 2.[1]  No proof of secondary meaning is needed for inherently distinctive marks, including fanciful marks, arbitrary

---

[1] The court may take judicial notice of the map (Dkt. No. 1-16 at 28), showing that Bluewater Key *is not an actual* island in the Florida Keys.

marks, and suggestive marks. *See Anderson v. Upper Keys Bus. Group, Inc.*, 61 So. 3d 1162, 1170 (Fla. App., 3d Dist. 2011).  The term, Bluewater Key does not have a meaning that relates to "RV resort rental services, namely, recreational vehicle (RV) park services." *See Am. Television and Commc'ns v. Am. Commc'ns and Television, Inc.*, 810 F.2d 1546, 1549 (11th Cir. 1987) (discussing that an arbitrary or fanciful name bears no relationship to the products or services).  The trademark, Bluewater Key is not primarily geographically descriptive under Section 2(e) (2) of the Lanham Act (15 U.S.C. § 1052) because the term, Bluewater Key is a made up term, coined by the developer. *See Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 805-808 (Tex. Ct. App. 2001) (protecting Horseshoe Bay coined by the developer as arbitrary for real estate development services where there was no established community by the name, Horseshoe Bay at the development site before the developer developed the area and the development site was previously called Lupton Ranch although Horseshoe Creek ran through the property); *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1538 (S.D. Tex. 1996) (Pinehurst is an arbitrary name selected by the developer of the resort); (*Prestwick, Inc. v. Don Kelly Bldg. Co.*, 302 F. Supp. 1121, 1124 (D. Md. 1969) (protecting the mark, "Tantallon" when used for a planned community was not geographically descriptive since the development had no prior general geographic name); *Levitt Corp. v. Levitt*, 1978 WL 21377, *4, 5 (E.D.N.Y.  Aug. 29, 1978) (protecting Levittown as a trademark that was coined by a developer, who transferred his rights to the plaintiff).  The term, Bluewater Key is not a generally known geographic location. Dkt. No. 1-6 at 28 compared to Dkt. No. 1-13 at 2. The term, Bluewater Key is not an actual geographic name of an island in the lower Florida Keys. Dkt. No. 1-6 at 28 compared to Dkt. No. 1-13 at 2.  In fact, Plaintiff RV Ownership Park Property Owners Association is located in Saddlebunch Keys. Dkt. No. 6 ¶ 9; Dkt. No. 1-6 at 28

compared to Dkt. No. 1-13 at 2. The map (Dkt. No. 1-6 at 28) shows the geographic location of Plaintiff's park is Saddlebunch Keys in Monroe County, Florida. The advertisement of 1995 (Dkt. No. 1-13 at 2) shows the same land in Plaintiff's park. Plaintiff RV Ownership Park Property Owners Association's business address is not Blue Water Drive. Dkt. No. 6 ¶ 3. Bluewater Key RV Ownership Park Property Owners Association's business address is 2950 Highway 1, Key West, Florida 33040. Dkt. No. 6 ¶ 3. Defendant's business address is 21092 First Avenue East, Cudjoe Gardens, Florida 33042. Dkt. No. 6 ¶ 4.

Defendant's attorney contends that the developer named the resort after Blue Water Drive, but Defendant's attorney and Defendant have no first hand personal knowledge of these contentions one way or another. Defendant, Rita Clark purchased a recreational lot in Bluewater Key RV Park years after the association was incorporated and Plaintiff began using the trademark, Bluewater Key. Further, Plaintiff's trademark is Bluewater Key rather than Blue Water Drive and Blue Water Drive is not a generally known geographic location. *See in re Jacques Bernier, Inc.*, 894 F.2d 389, 391 (Fed. Cir. 1990) (The word, "'primarily' in Section 2(e)(2) shows that the intent of the federal statute is not to refuse registration of a mark where the geographic meaning is minor, obscure, remote, or unconnected with the goods.").

The term, Bluewater Key may represent an aspect of the climate of the region which Plaintiff wishes to relate to Plaintiff's services, but the term, Bluewater Key is not merely descriptive of Plaintiff's "RV resort rentals services, namely, recreational vehicle (RV) park services." *In re Jacques Bernier, Inc.*, 894 F.2d 389, 391 (Fed. Cir. 1990). "[C]ase law shows numerous instances where the goods/place association is not the 'primary' meaning a mark connotes." *Id.* "For example, a geographic mark may indicate that a product is stylish or of high quality, i.e., HYDE PARK or NANTUCKET for clothing, and FIFTH AVENUE for a car." *Id.*

"The use of the geographic location may be arbitrary or fanciful, i.e., DUTCH BOY for paint."
*Id.* The geographic location may represent some important characteristic of the climate of the
region which the applicant wishes to relate to goods, i.e., ANTARCTICA for soft drinks." *Id.*
RODEO DRIVE indicates "the high quality and not the geographic origin of the product." *Id.*

The term, Bluewater Key is not merely descriptive because the term, Bluewater Key does
not immediately describe the qualities, characteristics, effect, purpose, or ingredients of
Plaintiff's services. *See Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357, 1358 (11th Cir.
2007). A customer who sees the term, Bluewater Key cannot readily discern that Plaintiff
provides "RV resort rentals services, namely, recreational vehicle (RV) park services." *See Nane
Jan, Inc. v. Seasalt and Pepper, LLC*, 2014 WL 5177655 at *4 (M.D. Fla. Oct. 14, 2014). A leap
of imagination, thought and perception is required to reach a conclusion as to the nature of
Plaintiff's services. The mark, Bluewater Key is at least suggestive. *See Id.* Since, the term,
Bluewater Key is at least suggestive, Plaintiff's remaining state and common law marks which
include the term, Bluewater Key are inherently distinctive and entitled to trademark protection as
to "RV resort rentals services, namely, recreational vehicle (RV) park services."

The fact that Defendant, Rita Clark d/b/a Bluewater Rentals filed a U.S. federal
trademark application and sought trademark protection for Bluewater Rentals inherently
acknowledges that Defendant also believed that the term, Bluewater was valid and protectable.
*See Nane Jan, Inc.*, 2014 WL 5177655 at *4, n. 5 (M.D. Fla. 2014); *MNI Mgmt., Inc. v. Wine
King, LLC*, 542 F. Supp. 2d 389, 409 (D.N.J. 2008); Dkt. No. 1-66 at 2; Dkt. No. 1-69 at 5. Not
only did Defendant file a U.S. Trademark Application, Ser. No. 85/623,894 for Bluewater
Rentals, Defendant acquired a U.S. Trademark Registration No. 4,274,836 and filed an U.S.
Trademark Opposition No. 91209747 against Plaintiff's U.S. Trademark Application, Ser. No.

85/644,802 for likelihood of confusion. Dkt. No. 1-69 at 5.  Defendant filed a voluntary

cancellation of Bluewater Rentals. Dkt. No. 1-69 at 5; Dkt. No. 1-69 at 111-112.  As a result, the

U.S. Trademark Trial and Appeal Board ("TTAB") entered a decision with prejudice against

Defendant and cancelled Defendant's trademark, Bluewater Rentals under Section 18 of the

Trademark Act since a trademark opposition was pending. Dkt. No. 1-69 at 5; Dkt. No. 1-69 at

101-102; Dkt. No. 1-69 at 98-99; Dkt. No. 1-69 at 91.  Plaintiff has met its burden of establishing

that Plaintiff owns protectable trademarks.  Thus, Defendant's contentions that Plaintiff's

Complaint should be dismissed for failure to allege a valid and protectable trademark should be

denied.

### F.  Plaintiff Is Not Required to Prove Secondary Meaning to State a Claim Where the Marks Are Inherently Distinctive

Defendant contends that Plaintiff fails to plead sufficient facts necessary to allege

acquired secondary meaning on the 13 Bluewater Service Marks as of the date of Defendant's

alleged infringement.  In response, Plaintiff's Federally Registered Mark, Bluewater Key is

arbitrary because the meaning does not relate to Plaintiff's "RV resort rental services, namely,

recreational vehicle (RV) park services" and the developer coined Bluewater Key. *See Am.

Television and Commc'ns*, 810 F.2d at1549; *Horseshoe Bay Resort Sales Co.*, 53 S.W.3d at 805-

808; *Pebble Beach Co.*, 942 F. Supp. at 1538; *Prestwick, Inc.*, 302 F. Supp. at1124; *Levitt Corp.*,

1978 WL 21377, *4, 5.  In the alternative, Plaintiff's Federally Registered Mark, Bluewater Key

is at least suggestive because imagination, perception, and thought is required to reach a

conclusion as to the nature of Plaintiff's "RV resort rental services, namely, recreational vehicle

(RV) park services". *See Nane Jan, Inc. v. Seasalt and Pepper, LLC*, 2014 WL 5177655 at *3, 4

(M.D. Fla. Oct. 14, 2014).  The state and common law marks include the inherently distinctive

term, Bluewater Key as applied to Plaintiff's recreational vehicle lot rental services. *See Fisher*

*Island Club, Inc. v. Arboleya Silichin Intern. Mktg., LLC*, 2015 WL 759521, *1 (S.D. Fla. Feb. 23, 2015) (developer was able to register Fisher Island and Fisher Island Club with the USPTO as protectable marks with a disclaimer of the term "Club"). No proof of secondary meaning is needed for inherently distinctive marks, including fanciful marks, arbitrary marks, and suggestive marks. *See Anderson v. Upper Keys Bus. Group*, 61 So. 3d 1162, 1170 (Fla. App., 3d Dist. 2011). This Court should deny Defendant's motion to dismiss Plaintiff's Complaint, based on Defendant's contentions that Plaintiff has failed to sufficiently allege facts about acquired secondary meaning. Alternatively, Plaintiff requests an opportunity to amend the pleadings.

Defendant contends that Plaintiff's Complaint is confusing regarding facts and the timeline. In response, Plaintiff, Bluewater Key RV Ownership Park Property Owners Association Inc. was incorporated in 1989. Dkt. No. 1-4 at 2-9; Dkt. No. 1-8 at 2-4. Lloyd was the President, Director, and Registered Agent of Plaintiff. Dkt. No. 1-4 at 2, 5, 6, 9; Dkt. No. 1-17 at 2. Lloyd Good, Jr. was the President of the developer, Saddlebunch Recreational Vehicle Park, Inc. Dkt. No. 1-6 at 2, 27, 28; Dkt. No. 1-7 at 2. Plaintiff was authorized in the governing documents to operate a rental program. Dkt. No. 1-8 at 5.

Lloyd, the President of the developer, Saddlebunch Recreational Vehicle Park was responsible for selling recreational vehicle lots in Bluewater Key RV Park. Dkt. No. 6 ¶ 21; Dkt. No. 1-9 at 2. Lloyd, the President and Director of Plaintiff managed Plaintiff and oversaw rental of recreational vehicle lots in Bluewater Key RV Park through Plaintiff. Dkt. No. 6 ¶ 15; Dkt. No. 1-16 at 2. Catherine Good Duncan was Lloyd's daughter. Dkt. No. 6 ¶ 29. Catherine's corporation acted as a rental agent for the RV lots. Dkt. No. 6 ¶ 30.

Plaintiff, itself, does not sell recreational vehicle lots (Dkt. No. 1-9 at 2), but Plaintiff advertises recreational vehicle lots for sale (Dkt. No. 1-13 at 2). Plaintiff does provide

recreational vehicle rental services in Bluewater Key RV Park to recreational vehicle lot owners. Dkt. No. 1-13 at 2; Dkt. No. 6 ¶ 28; Dkt. No. 1-16 at 2 (discussing 1994 actual association expenses less income). Lloyd communicated with lot owners regarding actual association expenses and income received from RV lots. Dkt. No. 6 ¶ 28; Dkt. No. 1-16 at 2. After Lloyd resigned in 1999 as officer and director of Plaintiff, a new board followed Lloyd and a new rental agent was chosen. Dkt. No. 6 ¶¶ 44-46; Dkt. No. 1-17 at 2.

Advertisements in 1989 show Bluewater Key for "new purpose-built island RV park with twenty-four hour security, on-sight management, a clubhouse and pool, waterfront sites, all with complete hook-ups, including cable tv." Dkt. No. 1-11 at 2, 3. Advertisements in 1989 show Bluewater Key for "a limited offering restricted to only 80 choice sites with prices starting at $52,500." Dkt. No. 1-11 at 2, 3. Advertisements in 1995 show advertisement for rental of recreational vehicle lots. Dkt. No. Dkt. No. 1-13 at 2.

Plaintiff alleges sufficient facts that Plaintiff began using Plaintiff's trademarks well before Defendant. Dkt. No. 6 ¶¶ 31-19, 20, 25-28, 31-34, 39, 40-43, 59-62, 64-66, 69, 71, 83, 84, 85, 91-100, 116-118, 121, 169-184; Dkt. No. 1-53 at 2-7; Dkt. No. 1-54 at 2; Dkt. No. 1-60 at 2; Dkt. No. 1-61 at 2, 3; Dkt. No. 1-62 at 2; Dkt. No. 1-64 at 2; Dkt. No. 1-69 at 98, 99, 101, 102, 111, 112. Defendant purchased lots in the park and started competing against Plaintiff for the rental of recreational vehicle lots. Dkt. No. ¶¶ 91-100; Dkt. No. 1-64 at 2.

Plaintiff and Defendant have been in multiple suits over the years in Florida state courts. Dkt. No. 1-8 at 2-6. The parties have been involved in an opposition proceeding before the TTAB. Dkt. No. 1-69 at 94, 95, 98, 99, 101, 102. The parties are currently in another Florida state suit. The parties are involved in this current federal suit. Plaintiff alleges evitable confusion based on Defendant's conduct of offering identical recreational vehicle park rental

services in the same park and using similar trademarks, domain names, and emails to target the same classes of customers. *See Shottland v. Harrison*, 2012 WL 2814350, *7, n. 5 (S.D. Fla. July 10, 2012); Dkt. No. 6 ¶¶ 25-27, 63-70, 85, 97-115, 121-123, 125, 130, 131, 133-144, 146-149, 153, 154, 156, 158, 159, 183; Dkt. No. 1-55 at 2; Dkt. No. 1-59 at 2, 3; Dkt. No. 1-63 at 2-5; Dkt. No. 1-54 at 2; Dkt. No. 1-60 at 2; Dkt. No. 1-61 at 2, 3; Dkt. No. 1-62 at 2; Dkt. No. 1-25; Dkt. No. 1-26 at 2; Dkt. No. 58 at 2. Plaintiff alleges progressive encroachment and bad faith. *See Id.* at 6, 7, n. 4; Dkt. No. 6 ¶¶ 99, 132, 184. "Any change in the format or method of use of the mark or expansion into new product lines or territories should be sufficient to excuse delay." *See Id.* at 6; Dkt. No. 6 ¶¶ 99, 112-114, 122, 123, 131-137.

### G. Plaintiff FDUTPA Claim Is Not Barred By the Statute of Limitations

The FDUTPA claim is not barred by the four years statute of limitations. Deception occurs if there is a representation, omission, or practice that is likely to mislead consumers. *Shottland v. Harrison*, 11-20140-CIV, 2012 WL 2814350, *7 (S.D. Fla. July 10, 2012). Defendant continued to use the trademark registration symbol after Defendant's trademark registration was cancelled by the TTAB on December 16, 2014. Dkt. No. 6 ¶¶ 161-167; Dkt. No. 1-69 at 5, 75, 76, 78, 79, 81, 83, 85, 87, 89, 94, 98, 99, 101, 102; Dkt. No. 1-66 at 2; Dkt. No. 1-69 at 5, 6. Defendant continued to use the trademark registration symbol despite receiving a letter of February 12, 2015 regarding false advertisement. Dkt. No. 6 ¶ 162; Dkt. No. 1-69 at 5, 6; Dkt. No. 1-66 at 2. Thus, four years have not passed since Defendant's deceptive acts.

### III.   CONCLUSION

Plaintiff requests that this Court deny Defendants' motion to dismiss since Plaintiff has alleged sufficient plausible facts for standing, trademark validity, trademark primacy, trademark infringement, false advertisement, and unfair competition.

Respectfully submitted,

PLAINTIFF by its attorneys,

/s/ Lee Robert Rohe, Esquire
LEE ROBERT ROHE [Fla. Bar No. 271365]
Post Office Box 420259
Summerland Key, Fl 33042
(305) 745-2254/ [Fax (305) 745-4075]
Email: lrrlaw@bellsouth.net

And

/s/ Autondria S. Minor, Esquire
[NY Bar No. 432308]
Schmeiser Olsen & Watts, LLP
22 Century Hill Drive, Suite 302
Latham, New York 12110
(518) 220-1850 [Fax (518) 220-1857]
Email: aminor@iplawusa.com

/s/ Arlen L. Olsen, Esquire
[NY Bar No. 2636132]
Schmeiser Olsen & Watts, LLP
22 Century Hill Drive, Suite 302
Latham, New York 12110
(518) 220-1850 [Fax (518) 220-1857]
Email: aolsen@iplawusa.com

<u>**CERTIFICATE OF SERVICE**</u>

In accordance with Local Rules, I, Lee Robert Rohe, Esq., hereby certify that this document was submitted to the Court through the CM/ECF system on June 15, 2015 and is being served electronically this day to: Steven Robert Kozlowski, Esquire, Attorney for Defendant, Kozlowski Law Firm, P.A., 777 Brickell Avenue, Suite 800, Miami, Florida 33131 at Steven@KLFPA.com.

<u>/s/ Lee Robert Rohe, Esquire</u>
**LEE ROBERT ROHE**