**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 15-10060-CIV-GOODMAN**

**[CONSENT CASE]**

BLUEWATER KEY RV OWNERSHIP PARK
PROPERTY OWNERS ASSOCIATION INC.,

      Plaintiff,

v.

RITA CLARK D/B/A BLUEWATER RENTALS,

      Defendant.

_____/

**ORDER ON DEFENDANT'S**
**MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Iconic songwriter/musician Bob Dylan certainly had (and still has) a way with words, and his musical words about relationships past, present, and future are deemed by some critics to be dazzling, abstract, and mystifying: "We always did feel the same/ We just saw it from a different point/ of view / tangled up in blue."[1]

More than forty years after Dylan released his "Tangled Up in Blue" song, the parties in this instant trademark infringement case are also tangled up in blue -- but

---

[1]     BOB DYLAN, *Tangled Up in Blue,* on BLOOD ON THE TRACKS (Columbia Records 1975).

they are tussling over the **meaning** of the word blue, as Plaintiff Bluewater Key RV

Ownership Park Property Owners Association Inc. ("Plaintiff"), owner of the Bluewater

Key RV resort in Key West, Florida ("RV Resort"), is suing Defendant Rita Clark

("Defendant") over her use of "Bluewater Rentals" and its alleged infringing effect on

Plaintiff's trademarks.[2] *See* [ECF No. 33].

Plaintiff alleges that Defendant uses the phrase "Bluewater Rentals" to promote

competitive rental services in the same RV Resort that Plaintiff owns, which is

confusing for Plaintiff's customers. [ECF No. 33, pp. 4-9]. Defendant claims that the

Bluewater Key trademarks are merely *descriptive*, as the RV Resort is adjacent to Blue

Water Drive in Key West, Florida, and non-distinctive based on the absence of

secondary meaning. [ECF No. 34, pp. 11-13].

Similar to the persons in the Dylan song, both parties here "always felt the

same" about an issue: the importance of using the word blue for promoting their

businesses at the RV Resort. But, given the positions taken in the Second Amended

Complaint and the motion to dismiss, it is clear that they see Bluewater Key

---

[2]      Plaintiff has registered its trademarks, **BLUEWATER KEY** and **BLUEWATER KEY A LUXURY RV RESORT,** in the United States and Florida respectively, in connection with its RV rental services (hereinafter referred to as the "Bluewater Key trademarks"). [ECF No. 33, ¶¶ 10-11, 17].

trademarks' alleged distinctiveness and protection under federal and state trademark law "from a different point of view."[3]

Defendant moved to dismiss Plaintiff's Second Amended Complaint on two grounds: (1) lack of standing, and (2) the absence of secondary meaning [ECF No. 34, pp. 2-3]. Plaintiff filed a response [ECF No. 35], and Defendant filed a reply [ECF No. 36]. The Undersigned has reviewed the Second Amended Complaint and the parties' filings, and for the reasons outlined below, the Undersigned **denies** Defendant's motion.

## I.      FACTUAL BACKGROUND AND PROCEDURAL POSTURE

Plaintiff has owned and operated the RV Resort since 1989. [ECF No. 33, ¶ 7]. For the Bluewater Key trademarks, Plaintiff owns the United States Trademark Registration No. 4,680,453 in connection with "RV resort rental services, namely, recreational vehicle (RV) park services," in International Class 43 and the State of Florida Trademark Registration No. T13000000295 in connection with "RV park service and rental properties" in International Class 43. [ECF No. 33, ¶¶ 10-11].

Plaintiff alleges that the Bluewater Key trademarks "are well-known and distinctive trademarks that have acquired secondary meaning based, in part, on Plaintiff's continuous and substantially exclusive use of its name and associated marks since at least as early as 1989." [ECF No. 33, ¶ 13].

---

[3]      BOB DYLAN, *supra* note 1.

Plaintiff also alleges that it has spent resources marketing and promoting its Bluewater Key trademarks and RV Resort, and through this alleged extensive use, the trademarks have wide recognition with the public, who understand that the trademarks identify Plaintiff's services. [ECF No. 33, ¶¶ 15-16].

Defendant offers real estate rental and leasing services under the mark, "Bluewater Rentals," for the owners of the RVs at the RV Resort. [ECF No. 33, ¶¶ 17-20].

Plaintiff alleges that Defendant possessed specific knowledge regarding both Plaintiff and the Bluewater Key trademarks since the opening of Defendant's business. [ECF No. 33, ¶ 17]. Plaintiff alleges that the likelihood of confusion, mistake, and deception engendered by Defendant's misappropriation of the Bluewater Key trademarks is causing irreparable harm to both Plaintiff and its trademarks. [ECF No. 33, ¶ 31].

Plaintiff filed an action against Defendant with counts relating to trademark infringement. [ECF No. 1]. Plaintiff later filed its First Amended Complaint, which Defendant responded to through a Motion to Dismiss [ECF Nos. 6; 16], which was subsequently dismissed as moot due to United States District Judge Jose E. Martinez's Order granting Plaintiff's Motion for Leave to File a Second Amended Complaint. [ECF Nos. 28; 30; 31]. Plaintiff filed a Second Amended Complaint, which Defendant seeks to dismiss through the filings before the Undersigned. [ECF Nos. 33; 34].

The Second Amended Complaint includes the following counts: (1) Federal Trademark Infringement; (2) Federal Unfair Competition; (3) Florida Trademark Infringement; and (4) Common Law Trademark Infringement and Unfair Competition. *See* [ECF No. 33, pp. 9-13].

## II.    LEGAL STANDARD FOR MOTION TO DISMISS

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts as true. *Jackson v. Okaloosa Cty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). "A pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). While detailed factual allegations are not always necessary to prevent dismissal of a complaint, the allegations must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 678 (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient **factual** matter, accepted as true, to 'state a claim to relief that is **plausible on its face**.'" *Iqbal,* 556 U.S. at 678. (quoting *Twombly,* 550 U.S. at 570) (emphasis added); *see also Am. Dental Assoc. v. Cigna Corp.,* 605 F.3d 1283, 1288–90 (11th Cir. 2010). "[C]onclusory allegations, unwarranted deductions of fact, or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002).

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cty.,* 999 F.2d 1508, 1510 (11th Cir. 1993)).

While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555; *Iqbal,* 556 U.S. at 678. "Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Magluta v. Samples,* 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley,* 355 U.S. at 45–46).

III.   **LEGAL ANALYSIS**

A.   **Defendant's Arguments Presented in the Dismissal Motion**

Defendant argues that the Undersigned should dismiss Plaintiff's Second Amended Complaint for two reasons: (1) Plaintiff, as an association, lacks standing (under its Declaration of Restrictions and Protective Covenants for Bluewater Key RV Ownership Park -- the "Declaration") to file this action, and (2) Plaintiff fails to state a cause of action for trademark infringement based on its conclusory allegations regarding secondary meaning.[4]

Defendant relies on myriad exhibits that were attached to the Complaint and referenced in the First Amended Complaint.[5]

To prove lack of standing, Defendant relies on the Declaration's requirement for Plaintiff to have three-fourths of its membership vote in favor of initiating any lawsuit. [ECF No. 1-6]. Defendant claims that Plaintiff did not allege it obtained such vote in the Second Amended Complaint before filing this action. [ECF No. 34, pp. 8-9].

---

[4]      This Court notes that Defendant moved to dismiss all of Plaintiff's claims in the Second Amended Complaint by collapsing Counts I-IV into the confines of Defendant's all-encompassing argument that the Bluewater Key trademarks lacked secondary meaning. *See* [ECF No. 34, p. 10].

[5]      Defendant incorrectly represents that the exhibits attached to the Complaint are also attached to the First Amended Complaint. However, the First Amended Complaint references the exhibits in the Complaint but does not include them as additional attachments, with the exception of Exhibits 15, 16, and Plaintiff's labeled supplemental documentation.  *See* [ECF Nos. 6; 6-1; 6-2; 6-3; 6-4; 6-5].

To prove lack of secondary meaning, Defendant mainly relies on a "map" that shows that the RV Resort is adjacent to "Blue Water Drive," and thus Plaintiff's Bluewater Key trademarks are geographically descriptive. [ECF Nos. 1-13; 34, pp. 13, 15]. Defendant also claims that Plaintiff has used 11 other versions of the Bluewater Key trademarks at all times relevant to this lawsuit. [ECF No. 34, p. 18]. Defendant summarizes in a chart contained on pages 18 and 19 of her motion to dismiss the different phrasings of the marks, the different types of marks used, and the corresponding exhibits from the prior complaints that illustrate Plaintiff's different uses of the same marks. [ECF No. 34, pp. 18-19].

Defendant additionally argues that the Bluewater Key trademarks lack secondary meaning based on Plaintiff's failure to assert the same in its United States Trademark Patent Office ("USTPO") application. [ECF Nos. 1-68, pp. 8-24; 34, p. 15].

### B.     This Court Cannot Consider Plaintiff's Prior Complaints and Attached Exhibits for This Dismissal Motion

As a threshold matter and as stated above, the Undersigned must first address the fact that Defendant's motion relies heavily on exhibits attached to the Complaint and First Amended Complaint. No party contests the authenticity of any of these documents, and, generally, when considering a motion to dismiss, the court may consider exhibits attached to the pleadings. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).

However, as a matter of law, "[a]n amended pleading **supersedes** the former pleading; 'the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'" *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) (emphasis added) (quoting *Proctor & Gamble Defense Corp. v. Bean*, 146 F.2d 598, 601 n. 7 (5th Cir. 1945)).

Although Defendant claims that the Undersigned has discretion to consider the prior exhibits on a motion to dismiss, and cites *Gross v. White*, 340 F. App'x 527, 534 (11th Cir. 2009) and *Hoefling v. City of Miami*, 17 F. Supp. 3d 1227, 1229 n. 2 (S.D. Fla. 2014) to support that theory, the Undersigned disagrees.

After Defendant filed her motion to dismiss, the Eleventh Circuit definitively ruled that a district court cannot consider exhibits from a prior complaint that a plaintiff has "expressly disavowed or rejected as untrue in a subsequent amended complaint" when evaluating a dismissal motion. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

Here, when Plaintiff filed its Second Amended Complaint, it, in effect, chose to expressly disavow any contradictory evidence contained in the exhibits attached to the prior complaints by not including them. From the Complaint through the Second Amended Complaint, Plaintiff has not changed its position that it was authorized to bring this action, that the Bluewater Key trademarks are distinctive, that the marks have

been continuously used since 1989, and through such continuous use the marks acquired secondary meaning.

When Plaintiff filed the Second Amended Complaint, the Complaint and the First Amended Complaint (and its attached exhibits) "became a legal nullity." *Hoefling*, 811 F.3d at 1277. The aforementioned exhibits relied on by Defendant in her motion to dismiss (and discussed in Section III. A. of this Order) were never refiled with Plaintiff's Second Amended Complaint. [ECF No. 33]. In light of Defendant's heavy reliance on documents which are legal nullities, the Court cannot consider such exhibits in assessing whether Plaintiff's latest complaint fails to state claims upon which relief can be granted.

C.       **Whether Plaintiff has Standing**

Defendant claims that she is entitled to prevail on a dismissal motion based on the Declaration's requirement that Plaintiff obtain a three-fourths vote of its membership before initiating this lawsuit. [ECF Nos. 1-6; 34, pp. 8-10]. Defendant claims that Plaintiff's Second Amended Complaint does not state that it obtained the required vote, and thus Plaintiff lacks standing. [ECF No. 34, p. 10].

Because the Declaration is not attached to the Second Amended Complaint, pursuant to *Hoefling*, 811 F.3d at 1277, the Undersigned cannot consider the Declaration's language concerning Plaintiff's authorization to bring this action. The Undersigned can only rely on the plain language of the Second Amended Complaint,

10

where Plaintiff alleges that it "has authorization to bring the instant action." [ECF No. 33, ¶ 2].  The Court accepts all well-pleaded facts alleged in Plaintiff's Second Amended Complaint as true at the motion to dismiss stage and denies Defendant's motion as to Plaintiff's lack of standing. *Grossman,* 225 F.3d at 1228.

> **D.**     **Whether Plaintiff States Causes of Action for Trademark Infringement and Unfair Competition**

> > i.     *Trademark Infringement and Unfair Competition Legal Standards*

To state a claim for trademark infringement, a plaintiff must plead facts demonstrating that (1) it possessed trademark rights in a mark, and (2) the defendant used a mark that was so similar to its own that consumers were likely to confuse the two. *Tana v. Dantanna's,* 611 F.3d 767, 774 (11th Cir. 2010) (citing 15 U.S.C. § 1125(a)). This legal standard is applied to trademark infringement and unfair competition claims under the Lanham Act, as well as to similar state and common law causes of action. *Tally Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1025-26 (11th Cir. 1989); *Knights Armament Co. v. Optical Sys. Tech.*, 568 F. Supp. 2d 1369, 1376 (M.D. Fla. 2008); *Greenberg Assocs., Inc. v. C & C Imports, Inc.*, 320 F. Supp. 2d 1317, 1330 (S.D. Fla. 2004).

A trademark may be classified as generic, descriptive, suggestive, arbitrary or fanciful, with generic trademarks generally having the lowest or no protection under the law and fanciful having the highest protection (as such marks are considered

distinctive).[6] *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 648 n.8 (11th Cir. 2007); *Investacorp, Inc. v. Arabian Inv., Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1522 (11th Cir. 1991).

A descriptive mark identifies a characteristic or quality of a service. *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1358 (11th Cir. 2007) (finding that "Vision Center" is a descriptive mark for an eyeglasses store); *Investacorp*, 931 F.2d at 1522 (noting that "Barn Milk" for a milk delivery service exemplifies a descriptive mark). The law protects descriptive marks only if they have acquired a secondary meaning or when consumers no longer associate the mark with the product, but instead associate the mark with the business. *Welding Servs.*, 509 F.3d at 1359.

Defendant's motion to dismiss addresses only the first element of a trademark infringement action -- whether Plaintiff sufficiently alleged that it has the rights to the Bluewater Key trademarks. The second element, likelihood of confusion, is not addressed. Therefore Plaintiff's allegation, that Defendant's use of "Bluewater Rentals"

---

[6]      "There are generally four categories of mark distinctiveness:  (1) generic—marks that suggest the basic nature of the product or service; (2) descriptive—marks that identify the characteristic or quality of a product or service; (3) suggestive—marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive; and (4) arbitrary or fanciful—marks that bear no relationship to the product or service, and the strongest category of trademarks." *Shottland v. Harrison*, No. 11-20140-CIV, 2012 WL 2814350, at *9 (S.D. Fla. July 10, 2012) (citing *Tana*, 611 F.3d at 774).

is so similar to the Bluewater Key trademarks that it resulted in confusion with Plaintiff's customers, is accepted as true. (ECF No. 33, ¶ 31).

ii.    *Whether Plaintiff Has the Rights to the Bluewater Key Marks*

Plaintiff alleges in the Second Amended Complaint that its Bluewater Key trademarks are "valid, subsisting, and irrevocable" based on their federal and state registrations. [ECF Nos. 33, ¶ 12, Exhibit "A;" 35, pp. 9-10]. It also alleges that such registration establishes a rebuttable presumption that the marks are protectable and distinctive. 15 U.S.C. § 1057(b); *Welding Servs.*, 509 F.3d at n.3.[7]

Defendant claims that such presumption of validity is overcome by establishing the generic or descriptive nature of the marks and, subsequently, the marks' resulting lack of secondary meaning. [ECF Nos. 34, pp. 14-15; 36, pp. 3-4].

The evidence that Defendant offers to prove the descriptive nature of Plaintiff's marks is a purported map, which allegedly indicates that the RV Resort is adjacent to Blue Water Drive. [ECF Nos. 1, ¶ 41; 1-13; 34, p. 13, n. 2]. This document, which Defendant deems a map [ECF No. 34, p. 13, n. 2] is attached or referenced as Exhibit 10

---

[7]      At the motion to dismiss stage, "[a] certificate of registration acts as prima facie evidence of the mark's validity and of the registrant's exclusive right to use the trademark mark." *Trailers, Inc. v. Hobson*, No. 8:14-CV-1004-T-33EAJ, 2014 WL 2993732, at *4 (M.D. Fla. July 2, 2014) (quoting *Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1228 (M.D. Fla. 2000)).

in Plaintiff's prior pleadings.[8] [ECF Nos. 1, ¶ 41; 1-13]. But this exhibit is not attached to the current version of the complaint and, in any event, is not a map.

Plaintiff responds to Defendant's arguments about its trademarks' purported lack of distinctiveness by referring to Defendant's application to the USPTO for the mark "Bluewater Rentals," which is attached to the Second Amended Complaint. [ECF Nos. 33, Exhibit "B;" 35, pp. 12-14].

In this application, Defendant stated that "the wording 'BLUEWATER' has no geographic significance." [ECF No. 33, Exhibit "B"]. Plaintiff claims that this wording means that Defendant is judicially estopped from seeking dismissal of this action based on the geographic descriptiveness of the Bluewater Key trademarks. *Freedom Card, Inc. v. JP Morgan & Co.*, 432 F.3d 463, 476 (3d Cir. 2005) (finding that judicial estoppel applied based on the binding representations plaintiff made to the USPTO).[9]

---

[8]    This Court will not take judicial notice of Exhibit 10 of the Complaint, which Defendant calls a "map." [ECF Nos. 1, ¶ 41; 1-13; 34, p. 13, n. 2]. Although the Eleventh Circuit Court of Appeals has ruled that the Court may take judicial notice of locations on a map, the exhibit Defendant is referring to is not a map. Instead, it is a copy of Plaintiff's rental advertisement from 1995.  [ECF Nos. 1, ¶ 41; 1-13]; *cf. United States v. Proch*, 637 F.3d 1262, 1266 n.1 (11th Cir. 2011) (taking judicial notice of a map of Fort Walton Beach, Florida that contained addresses listed in a criminal indictment).

[9]    This Court notes that all the cases cited by Plaintiff in support of its judicial estoppel argument are non-binding opinions from federal courts in other jurisdictions. *See* [ECF No. 35, pp. 12-14].  These courts considered judicial estoppel in intellectual property cases at the summary judgment and final judgment stage, not at the motion to dismiss stage. *See* [ECF No. 35, pp. 12-14]; *Freedom Card*, 432 F.3d at 476 (discussing judicial estoppel's applicability and affirming district court's summary judgment

Defendant contends that judicial estoppel is inapplicable here because she surrendered the registration of her mark on July 1, 2014. [ECF No. 33, ¶ 22]; *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) (finding that when considering judicial estoppel, courts must examine whether a party's "present position is 'clearly inconsistent' with the earlier position").

Both parties are missing the point. As previously stated, the Court cannot consider Defendant's evidence about the Bluewater Key trademarks' geographic descriptiveness because the referenced exhibit is not attached to the Second Amended Complaint. Therefore, judicial estoppel, or the lack thereof, is currently irrelevant.

Even if this Court could consider evidence about geographic descriptiveness at this preliminary juncture, it would require the Undersigned to make factual determinations, which would be a premature process (and more appropriate for a summary judgment motion evaluation). *See, e.g. St. Luke's Cataract & Laser Inst. P.A. v. Sanderson*, 573 F.3d 1186, 1208 (11th Cir. 2009) ("'[d]istinctiveness is a question of fact'") (quoting *Welding Servs. Inc.*, 509 F.3d at 1357 (affirming summary judgment that plaintiff's mark was generic and finding that such determination was factual)).

---

ruling); *Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.*, 130 F.3d 88 (4th Cir. 1997) (discussing judicial estoppel's applicability and affirming district court's judgment after a bench trial); *Ciphertrust, Inc. v. Trusecure Corp.*, 2005 U.S. Dist. LEXIS 46322, at *66-67 (E.D. Va. Nov. 28, 2005) (discussing judicial estoppel's applicability and entering judgment after a bench trial). Therefore, the Undersigned does not find those cases persuasive.

Therefore, at this stage, the Court must accept Plaintiff's allegations as *presumably* true that it has the rights to its registered Bluewater Key trademarks.

      iii.    *Whether Plaintiff Sufficiently Alleges that Its Marks Have Secondary Meaning*

Defendant requests that this Court dismiss the Second Amended Complaint because it contends that Plaintiff cannot state a cause of action for trademark infringement or unfair competition under both federal and Florida law based on Plaintiff's conclusory allegations as to secondary meaning.

A plaintiff can establish that its mark acquired a secondary meaning by proving the following: "1) the length and manner of the trademark's use, (2) the nature and extent of advertising and promotion of the trademark, (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the trademark and the plaintiff's business, and (4) the extent that the public actually identifies the trademark with the plaintiff's business." *IT Strategies Grp., Inc. v. Allday Consulting Grp., LLC*, No. 13-60014-CIV, 2014 WL 11531625, at *1–2 (S.D. Fla. July 17, 2014) (citing *Welding Servs.*, 509 F.3d at 1358).

In the Second Amended Complaint, Plaintiff's factual allegations directly address the secondary meaning factors cited above. Plaintiff alleges that since 1989, it has continuously and exclusively used its name with the associated Bluewater Key trademarks. [ECF No. 33, ¶ 13]. Since 1998, it allegedly has operated a website located at the domain name bluewaterkey.com, which includes the Bluewater Key trademarks.

[ECF No. 33, ¶ 14]. Plaintiff has spent a "considerable amount of resources, time, and effort marketing and promoting" its trademarks including on its Facebook page and Twitter account. [ECF No. 33, ¶¶ 15-16, 25]. As a result, the trademarks have "garnered widespread recognition with the consuming public" who understand that the trademarks "identify services . . . affiliated with Plaintiff." [ECF No. 33, ¶¶ 15-16].

Unlike the Plaintiff in *Tropic Ocean Airways, Inc. v. Floyd*, 598 F. App'x 608, 612 (11th Cir. 2014), where the Eleventh Circuit affirmed the district court's dismissal of a complaint because the allegations were formulaic recitations as to secondary meaning and lacked factual support, Plaintiff's allegations, as stated above, are sufficiently supported by alleged facts as to the length of time it used the trademarks and its promotion of the same on its website and through social media. *See, e.g. It Strategies Group, Inc.*, 2014 WL 11531625, at *2 ("For example, in paragraphs 10 and 11, IT Strategies alleges how long the trademark has been used. In paragraphs 11 and 12, IT Strategies alleges the nature and extent of the advertising and promotion of the trademark. These allegations are sufficient to pass the pleading burden of Rule 8(a), even though IT Strategies does not plead the specific label 'secondary meaning'").

Beyond stating that Plaintiff's allegations are conclusory, which is not the case, Defendant offers other arguments to challenge Bluewater Key trademarks' alleged secondary meaning. Defendant attempts to discredit Plaintiff's allegation that it continuously used the trademarks for rentals at the RV Resort since 1989 through a

letter from Plaintiff's president where he allegedly discusses using rental services for the first time at the RV Resort in 1999. [ECF Nos. 6-1; 34, p. 17].  Defendant also claims that the first day Plaintiff used the Florida trademark was in January of 2000 (from the Florida Department of State Division of Corporations trademark name search results) and that Plaintiff's USPTO certificate of registration is silent as to secondary meaning under the principle register section. [ECF Nos. 33, Exhibit "A;"34, pp. 14-15, 17].[10]

Defendant does not cite anywhere in the motion to dismiss or in her reply that Plaintiff's president's letter was attached to the Second Amended Complaint.  *See* [ECF Nos. 34; 36]. However, as it turns out, the letter **was** in fact attached to the Second Amended Complaint, and thus the Court can consider such evidence. *See* [ECF No. 33, Exhibit "C," p. 44]. Reliance of the USPTO certificate of registration, the letter, and the trademark name search results may in fact create issues of fact as to whether Plaintiff first used the Bluewater Key trademarks in 1989 and whether its marks have secondary meaning.

Nonetheless, at this stage, Plaintiff has sufficiently alleged facts, which this Court accepts as true, to state a cause of action for trademark infringement and unfair

---

[10]     Defendant also cites to the prior pleadings in an effort to further prove its view that this action requires dismissal. Defendant claims that Plaintiff used 11 other versions of the Bluewater Key trademarks at all times relevant to this lawsuit and that Plaintiff's application to the USPTO for its marks is silent as to secondary meaning. [ECF Nos. 1-68, pp. 8-24; 34, pp. 18-19]. As noted above in Sections III. A. & B. of this Order, this Court cannot consider Defendant's chart or Plaintiff's USTPO application.

competition. Defendant will still have the opportunity to seek to disprove those allegations. Whether through discovery, seeking dispositive relief through a motion for summary judgment, or at trial, the Court or a jury will seek to rebut the lyrics from Dylan's song -- by **un**tangling the meaning of blue.

## IV.    CONCLUSION

The Court **denies** Defendant's Motion to Dismiss.

**DONE and ORDERED** in Chambers, in Miami, Florida, on September 12, 2016.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All Counsel of Record

19